THE STATE OF OHIO, APPELLEE, *v.*
REIGER ET AL., APPELLANTS.

[Cite as State v. Reiger (1978), 63 Ohio App. 2d 135.]

(No. L-78-017—Decided July 14, 1978.)

*Mr. David M. Schnorf* and *Mr. James C. Sass,* for appellants.

*Mr. M. Scott Ramey,* for appellee.

POTTER, P. J. Defendants, the appellants herein, are employed as truck drivers for Nicholson Concrete Company. On May 13, 1977, Trooper Click of the Ohio State Highway Patrol stopped Ross Abbot and appellant Orville Reiger, individually, for the purpose of conducting a safety inspection of the cement trucks they were driving. On May 16, 1977, Trooper Click stopped the cement trucks driven by appellants James Rupp and James Paschal to conduct a safety inspection

of their vehicles. No citations for safety violations were issued; however, each driver was ordered to proceed to an area on Wilford Road near Central Avenue where the vehicles were weighed by portable scales. All four vehicles were found to be in violation of the maximum load limit and each of the drivers was cited for a violation of R. C. 5577.04.

Separate motions to suppress evidence relating to vehicle weight were filed on behalf of the four drivers. These motions were denied and the cases were consolidated for a non-jury trial in Sylvania Municipal Court. The charges against Ross Abbot were dismissed on the basis that he was required to drive more than three miles to the portable scales. The other defendants, appellants herein, were found guilty of violating R. C. 5577.04 and fined. Appellants now appeal those judgments and file the following assignments of error:

"1. The lower court erred in overruling defendants' motions to suppress evidence which the prosecution intended to offer at trial on the ground that said evidence was obtained as the result of an improper seizure and unlawful arrest in violation of the laws of both the state of Ohio and the United States of America.

"2. It is a point of reversible error that because the arresting officer did not comply with the requirements of Section 4513.33, O.R.C. regarding determinations which must be made as to street elevation when a vehicle is being weighed on a terrain which is not level, the judgment of the trial court is against the manifest weight of the evidence.

"3. Defendant-Appellants' trucks were held for an unreasonable length of time during the weighing and citation processes which resulted in destruction of a known perishable commodity. This was a violation of the requirements of Section 4513.33, O.R.C.

"4. The prosecution did not establish a prima facie case on the charges of vehicle overload as they did not prove beyond a reasonable doubt that the scales used in weighing Defendant-Appellants' vehicles had affixed to them the type of seal required by Section 4513.33, O.R.C."

At the hearing on the motion to suppress, Trooper Click testified that appellants' vehicles were stopped for a safety inspection because all of the trucks had obvious safety defects. Trooper Click could not remember any of these defects, but

did recall writing up repair orders for the vehicles which directed the owner of the vehicles to correct the noted defects. These orders were not introduced into evidence. Trooper Click also testified that during the inspection, he asked each driver to produce his operator's license, the vehicle registration, and the load ticket for the vehicle in order to obtain the information necessary to complete the safety inspection form. The inspection form required information as to the type of load and the consignee and consignor thereof, but did not require the weight or other measurements of the vehicle. Trooper Click admitted that he made the determination to weigh the vehicles only after seeing the load tickets and also stated that prior to stopping the vehicles and looking at the load tickets he did not have reason to believe that the vehicles were overloaded.

We find that Trooper Click's initial stopping of the vehicles was pursuant to the authority vested in him by R. C. 4513.02(B) which provides in pertinent part:

"When directed by any state highway patrolman, the operator of any motor vehicle shall stop and submit such motor vehicle to an inspection and such tests as are necessary to determine whether it is unsafe or not equipped as required by law, or that its equipment is not in proper adjustment or repair, or in violation of the equipment provisions of Chapter 4513 of the Revised Code."

R. C. 4513.33, which governs the weighing of vehicles, in pertinent part, provides as follows:

"Any police officer having reason to believe that the weight of a vehicle and its load is unlawful may require the driver of said vehicle to stop and submit to a weighing of it by means of a compact, self-contained, portable, sealed scale specially adapted to determine the wheel loads of vehicles on highways; a sealed scale permanently installed in a fixed location, having a load-receiving element specially adapted to determining the wheel loads of highway vehicles; a sealed scale, permanently installed in a fixed location, having a load-receiving element specially adapted to determining the combined load of all wheels on a single axle or on successive axles of a highway vehicle, or a sealed scale adapted to weighing highway vehicles, loaded or unloaded. The driver of such vehicle shall, if necessary, be directed to proceed to the nearest available of such sealed scales to accomplish the weighing pro-

vided such scales are within three miles of the point where such vehicle is stopped.* * *"

In their first assignment of error appellants content that Trooper Click used the R. C. 4513.02(B) safety inspection as a subterfuge in an attempt to avoid the "reason to believe" requirement of R. C. 4513.33 and to thereby engage in the indiscriminate weighing of trucks. Appellants correctly note that R. C. 4513.02(B) does not provide that weighing a vehicle is part of a safety inspection. Further, Trooper Click himself testified that the safety inspection form required only information as to the type of load and not the amount of the load. Appellants submit that the procedure employed by Trooper Click was not contemplated by the legislature and is indistinguishable from the actions condemned in *State* v. *Ehling* (1973), 36 Ohio App. 2d 155.

In *Ehling,* the defendant truck driver was stopped by a highway patrol officer and asked to display his operator's license and the loading ticket for the vehicle. The vehicle was then weighed on portable scales and found to be overweight, in violation of R. C. 5577.04. The patrolman testified that his sole duty on the day of the incident was to weigh trucks and that the only reason he stopped the defendant was to weigh the truck. The court held that the state's failure to establish that the patrolman had reason to believe the truck was overweight or otherwise being operated in an unlawful manner made the initial stopping of the truck unauthorized and invalidated the weighing and citation for a violation of R. C. 5577.04. We find the case *sub judice* clearly distinguishable from the *Ehling* case.

In the instant case, the initial stopping of the vehicle was clearly lawful. Appellants appear to attack the credibility of Trooper Click's statement that their vehicles had obvious safety defects and point out that there is no evidence of the defects other than the trooper's statement. However, whether or not these vehicles were obviously unsafe has no relevance to the lawfulness of the initial stop. R. C. 4513.02(B) does not require patrolmen to have a reason to believe that vehicles which are stopped have safety defects; vehicles may be stopped at random for a safety inspection. Appellants interpret *Ehling* to mean that a patrolman must have reason to believe that a vehicle is overweight before he *stops* it. We do not agree. *Ehling*

merely held that in light of the plain language of R. C. 4513.33, a patrolman must have reason to believe that a vehicle is overweight before he *weighs* it. The initial stopping of a vehicle is lawful, even if there is no reason to believe the vehicle is overweight, provided that such stopping is authorized under another statutory or regulatory provision, such as, for example, the stopping of a speeding vehicle, or, as in the instant case, the stopping of a vehicle to conduct a safety inspection.

When a lawful safety inspection is conducted, the trooper is entitled to certain information, which, in this case, was contained on the vehicle's loading tickets. It is true that a notation of the amount of the load was not required for the safety inspection form; however, that information was in plain view on the loading ticket. After seeing the amount of the load on the loading tickets for the vehicles, Trooper Click drew upon his undisputed prior knowledge and experience and determined that there was reason to believe these trucks were overweight. It was only after that determination that the trucks were weighed.

We must also note that the "reason to believe" requirement of R. C. 4513.33 is not to be interpreted to mandate a showing of probable cause, as is required to obtain a search warrant. In any event, we find that the evidence sought to be suppressed was obtained as a result of lawful stoppings, pursuant to R. C. 4513.02(B) and also find that the "reason to believe" requirement of R. C. 4513.33 was met. Appellants' first assignment of error is, therefore, not well taken.

A consideration of the second assignment of error requires a construction of the following portion of R. C. 4513.33:

"During determination of weight by compact, self-contained, portable, sealed scales, specially adapted to determining the wheel loads of vehicles on highways, they shall always be used on terrain of sufficient length and width to accommodate the entire vehicle being weighed. Such terrain shall be level, or *if not level, it shall be of such elevation that the difference in elevation between the wheels on any one axle does not exceed two inches and the difference in elevation between axles being weighed does not exceed one-fourth inch per foot of the distance between said axles.*" (Emphasis added.)

It is undisputed that no individual elevation measurements, as required by the last sentence of R. C. 4513.33, were

taken of defendants' trucks prior to weighing, and the witnesses for the state admitted that the roadway where the trucks were weighed was not level. Trooper Click testified that he used a two-by-four and level to grade test the area in question less than a month before appellants' trucks were stopped and again shortly after these incidents. Trooper Click also stated that there were no marks on the roadway to indicate exactly where to weigh trucks each time and admitted that the portable scales were not put in precisely the same spot on the roadway each time a truck was weighed. According to Trooper Click's testimony, the elevation tests were conducted in the same general area where appellants' trucks were weighed, but the tests did not cover the entire area and perhaps would not have included the exact spot where the scales were set up to weigh appellant's trucks.

Although he could not recall the exact measurements obtained as a result of the tests conducted, Trooper Click stated that the measurements indicated that the elevation variation was within the limits allowed by the statute.

The state's only other evidence as to the roadway's elevation was the testimony of Robert Dickus, a load limit inspector who did the actual weighing of the trucks involved in this appeal. Mr. Dickus also stated that there were no elevation measurements taken on the days these trucks were weighed and also testified that he and Trooper Click conducted the elevation tests only after the trucks were weighed.

Appellants maintain that R. C. 4513.33 imposes a duty upon the officer to make a determination of elevation by measurements dictated by R. C. 4513.33 each time a truck is weighed by means of portable scales. The prosecution contends that the statute does not require a separate determination for each truck weighed, but rather mandates only that the roadway where the weighing is done be within the level requirements of the statute. We agree with appellants' contention and find that the state failed to establish that the weighing process was conducted in accordance with the statute.

R. C. 4513.33 describes the level requirement and elevation tolerance in terms of "wheels on any one axle" and "distance between axles." Since trucks vary in length and width, it would be impossible to arrive at the calculations mandated by the statute unless the specific truck to be weighed is

measured in relation to the spot where the scales are located. We hold, therefore, that R. C. 4513.33 mandates that the elevation measurement and tolerance calculation must be performed individually for every vehicle before that vehicle can be properly weighed with portable scales. Because the evidence in the case *sub judice* clearly shows that the state failed to comply with the mandatory elevation and tolerance measurement procedure, appellants' trucks were not weighed in accordance with R. C. 4513.33. Appellants' second assignment of error is well taken.

In their third assignment of error, appellants contend that their trucks were held for an unreasonable amount of time during the weighing process and that these unreasonable detentions resulted in a violation of R. C. 4513.33. The portion of R. C. 4513.33 pertinent to this assignment of error reads as follows:

"* * * Any vehicle stopped in accordance with this section may be held by the police officer for a reasonable time only to accomplish the weighing as prescribed by this section."

While we agree with appellants' contention that the determination of a "reasonable time" must take into account all of the facts and circumstances surrounding the weighing and citation process, including the known perishable nature of the load, we do not agree that the time taken to weigh appellants' trucks and issue citations was unreasonable. The evidence as to how long each of the trucks was actually detained is conflicting. The record does show that the actual weighing of two of the trucks took approximately fifteen minutes each. Appellants were detained for some time prior to the weighing and for some time thereafter, but the state did not produce documentary evidence as to the actual time elapsed from the time each truck was stopped until each appellant and his truck was released and the state's witnesses could not recall the times with reasonable accuracy. Records made by the appellants indicated that appellant Rupp was detained for forty minutes, appellant Paschal for fifty minutes and appellant Reiger for one hour and ten minutes.

The state contends that at least some of the time recorded by two of the appellants as detention was actually time these appellants voluntarily spent, after their release, asking questions. In any event, accepting appellants' records as the max-

imum time appellants were detained, and noting that the concrete carried in the trucks was irreparably damaged, we, nonetheless, find that these time periods were reasonable and were thus in conformity with the statute. Appellants' third assignment of error is, therefore, not well taken.

In their fourth assignment of error, appellants contend that the state failed to prove that the scales used to weigh the vehicles were of the type mandated by R. C. 4513.33. The pertinent part of that statute is as follows:

"***All scales used in determining the lawful weight of a vehicle and its load shall be annually compared by a municipal, county, or state sealer with the state standards or standards approved by the state and such scales shall not be sealed if they do not conform to the state standards or standards approved by the state.***"

We find from the record that there was sufficient evidence that the scales did have the required seal and were otherwise in conformity with the statutory requirements. See *State* v. *Kuno* (1976), 46 Ohio St. 2d 203; *State* v. *Gribble* (1970), 24 Ohio St. 2d 85. The fourth assignment of error is not well taken.

The court finds that the defendants were prejudiced and prevented from having a fair trial. The judgments of the Sylvania Municipal Court are reversed and the defendants are ordered discharged.

*Judgments reversed.*

BROWN, J., concurs.

CONNORS, J., concurs in part and dissents in part.

CONNORS, J., concurring in part and dissenting in part. I concur in the findings of the majority with reference to assignments of error Nos. 1, 3 and 4. I dissent from the majority as to their findings with regard to assignment of error No. 2, and would affirm the trial court.

R. C. 4513.33, paragraph three, is set forth, in part, in the majority opinion relative to the second assignment of error.

The legislature, in its wisdom, provided for the use of compact, self-contained, portable, sealed scales. To do otherwise would require a truck (thought to be overweight) to drive miles (in most instances) to a stationary scale.

The statute requires the use of such portable scales on level terrain; if not level, the terrain shall be of such elevation that the difference in elevation between the wheels on any one axle does not exceed two inches and the difference in elevation between axles being weighed does not exceed one-fourth inch per foot of the distance between axles.

All three trucks were stopped within a mile of the weighing area on Wilford Road, a generally flat area of terrain. The same scales were used. One truck was 7,650 pounds overweight, or three and three-quarter tons. One truck was more than seven tons overweight. One truck was more than two-and-a-half tons overweight. The arresting officer had been conducting such tests for over fourteen years and had been permanently assigned to this type of duty for approximately three months. He testified that he was familiar with what the state requirement is, as far as the grade of the terrain, when portable scales are used. He knew the requirements practically verbatim. He testified as to the procedure used to verify the levelness of the terrain and that the grade elevation was less than is required by statute. He testified that the road was constructed of paved asphalt surface. He testified that there was no change in the conditions of the asphalt between the date of the first weighing and the third weighing involved here from February 13 to February 16, 1977. No potholes were present. The trucks were all weighed in the same general area, as pinpointed by a sign by the witness and were of the same type and size, "ready mix" concrete trucks, belonging to the same company.

The arresting officer's testimony was buttressed by the testimony of a load limit inspector for the state of Ohio, who assisted in the weighing procedures. He, with the arresting officer, conducted a test for the tolerance of elevation of the area in which the weighing was done, and found it to be within tolerance. This took place about two days after the citings. I find it difficult to believe that the testing area had somehow changed within such a short period of time, especially in view of the fact that the arresting officer had tested the area a month before the citations were issued.

The officer measured the trucks in length and width. They measured fifteen feet, ten inches long, and less than eight feet

wide. The weight limitations of the trucks were based on calculations made pursuant to R. C. 5577.04.

Thus, the officer calculated the elevation of the road, the load permitted by statute, and the length and width of the trucks, as required by statute.

I find that the arresting officer, from the record, did comply with the requirements of R. C. 4513.33 regarding determinations which must be made as to street elevation, length and wheel and axle distances, while weighing a vehicle and that the judgment of the trial court was not against the manifest weight of the evidence.

I would, therefore, find all assignments of error not well taken, and affirm the trial court's judgment.