The STATE of Ohio, Appellee,

v.

ELDER, Appellant.

[Cite as *State v. Elder* (1989), 65 Ohio App.3d 463.]

Court of Appeals of Ohio,
Geauga County.

No. 1472.

Decided Dec. 4, 1989.

*Richard Ziegler* and *A.M. Psenicka,* for appellee.

*Petersen, Ibold & Wantz* and *David M. King,* for appellant.

CHRISTLEY, Presiding Judge.

This is an accelerated calendar case.

This is an appeal from the Chardon Municipal Court. On May 17, 1988, appellant, James Elder, who was driving a semi-truck tractor, was stopped in the village of Chardon by Sergeant Thomas T. Dewey. Sergeant Dewey had observed that appellant's truckload appeared to be considerably higher than the sideboards of the truck, which is an indication of overload.

Sergeant Dewey also observed, by checking his speedometer, that appellant was going sixty-two m.p.h. in a fifty-five m.p.h. zone.

After stopping appellant, Sergeant Dewey asked appellant whether or not he had any bills or weigh tickets for his load. Appellant replied "no." After climbing on appellant's truck and ascertaining that appellant was carrying coal, Sergeant Dewey called the Chardon Police Department to find out where he could weigh appellant's truck. After locating a scale vehicle, Sergeant Dewey weighed appellant's truck and concluded that the truck was over-loaded. Appellant was then charged with a violation of R.C. 5577.04, load limits on highways. However, appellant was not charged with speeding.

After a bench trial on June 10, 1988, the court found appellant guilty. Judgment was entered on June 22, 1988. Appellant filed a timely notice of appeal on July 22, 1988 with the following assignments of error:

"1. The trial court erred in finding the defendant guilty for the reason that the evidence failed to show specific and articulable facts which would have given the arresting officer reason to believe that the weight of defendant's vehicle and its load was unlawful.

"2. The judgment of the trial court is against the manifest weight of the evidence because the arresting officer did not comply with the requirements of Section 4513.33 of the Ohio Revised Code pertaining to the allowable elevation variances between the axles and wheels of the vehicle being weighed on unlevel terrain."

Initially we must deal with the problem of the record before us. The proceedings at the trial court level were tape recorded. Numerous portions of this tape were inaudible. Those inaudible portions are of unknown length. Appellant has the initial responsibility to present enough of a record to support his case. He has done so here. If portions are omitted or unavailable which support appellee's position, then it is up to appellee to provide the same to this court. Appellee did not do so. Thus, we must accept the record as it is before us and the responsibility for any resulting inaccuracies falls upon appellee.

As to the first assignment of error, R.C. 4513.33 provides:

"Any police officer having reason to believe that the weight of a vehicle and its load is unlawful may require the driver of said vehicle to stop and submit to a weighing of it by means of a compact, self-contained, portable, sealed scale specially adapted to determine the wheel loads of vehicles on highways * * *."

In support of his arguments, appellant cites *State v. Ehling* (1973), 36 Ohio App.2d 155, 65 O.O.2d 248, 303 N.E.2d 914, syllabus, wherein the court held:

"Where, in a trial of one charged with violating R.C. 5577.04 (load limits on highways), no evidence is produced to show that the arresting officer had a reason to believe a vehicle was being operated in an unlawful manner, as required by R.C. 4513.33 (weighing of vehicle), a conviction is invalid."

A review of the facts of *Ehling* show that the record failed to reveal *any* evidence that the arresting officer had "reason to believe" that the defendant's truck was overloaded.

In *State v. Reiger* (1978), 63 Ohio App.2d 135, 138–139, 17 O.O.3d 332, 334, 409 N.E.2d 1037, 1041, the court discussed *Ehling, supra,* as follows:

" * * * Appellants interpret *Ehling* to mean that a patrolman must have reason to believe that a vehicle is overweight before he *stops* it. We do not agree. *Ehling* merely held that in light of the plain language of R.C. 4513.33, a patrolman must have reason to believe that a vehicle is overweight before he *weighs* it. The initial stopping of a vehicle is lawful, even if there is no reason to believe the vehicle is overweight, provided that such stopping is authorized under another statutory or regulatory provision, such as, for example, the stopping of a speeding vehicle, or, as in the instant case, the stopping of a vehicle to conduct a safety inspection.

" * * *

"We must also note that the 'reason to believe' requirement of R.C. 4513.33 is not to be interpreted to mandate a showing of probable cause, as is required to obtain a search warrant. * * * " (Emphasis *sic*.)

In *State v. Wells* (1983), 11 Ohio App.3d 217, 221, 11 OBR 340, 344–345, 464 N.E.2d 596, 600–601, the court discussed *Reiger, supra,* as follows:

"In the *Reiger* case, we held that the 'reason to believe' language of R.C. 4513.33 'is not to be interpreted to mandate a showing of probable cause, as is required to obtain a search warrant.' *State v. Reiger, supra* [63 Ohio App.2d], at 139 [17 O.O.3d at 334–335, 409 N.E.2d at 1041]. Nor would 'reason to believe' justify any *seizure* of a person that amounts, in effect, to an arrest, since it is well-established that a full-blown arrest cannot be justified on anything *less* than probable cause. See *Dunaway v. New York*

(1979), 442 U.S. 200, 208–212 [99 S.Ct. 2248, 2254–2256, 60 L.Ed.2d 824, 832–836]. The trial court was correct in concluding that the statutory requirement of 'reason to believe' and the constitutional concept of probable cause are not the same.

"However, R.C. 4513.33 would not survive constitutional scrutiny if 'reason to believe' permitted stops to be made on anything less than what the Fourth Amendment to the federal Constitution sets out as a 'minimum standard.' 'Reason to believe' is, therefore, tantamount to 'reasonable suspicion,' as that concept has evolved and come to be understood since its inception in *Terry v. Ohio* (1968), 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889, 44 O.O.2d 383]; see, also, *Florida v. Royer* (1983) [460 U.S. 491, 103 S.Ct. 1319], 75 L.Ed.2d 229." (Emphasis *sic.*)

■ In this case, Sergeant Dewey testified that prior to stopping appellant, he had observed that the height of appellant's load appeared to be considerably higher than the sideboards of appellant's truck, which is an indication of overload, that appellant was speeding, and that the truck "wouldn't pull the hill to start."

■ After stopping appellant, but *before* weighing, Sergeant Dewey observed that appellant's truck springs were bent, which frequently indicates an overload, and that appellant was hauling coal, a substantial payload. These observations are in accordance with *Reiger, supra,* which held that the officer must have "reason to believe" only before *weighing.*

Appellant's first assignment of error is not well taken.

In his second assignment of error, appellant argues that the judgment was against the manifest weight of the evidence. Appellant argues that the arresting officer did not comply with the requirements of R.C. 4513.33 pertaining to the allowable elevation variances between the axles of a vehicle being weighed on unlevel terrain.

R.C. 4513.33 provides in pertinent part:

"During determination of weight by compact, self-contained, portable, sealed scales, specially adapted to determining the wheel loads of vehicles on highways, they shall always be used on terrain of sufficient length and width to accommodate the entire vehicle being weighed. *Such terrain shall be level, or if not level, it shall be of such elevation that the difference in elevation between the wheels on any one axle does not exceed two inches and the difference in elevation between axles being weighed does not exceed one-fourth inch per foot of the distance between said axles.*" (Emphasis added.)

In *State v. Dryer* (1987), 36 Ohio App.3d 193, 521 N.E.2d 842, syllabus, this court held:

"R.C. 4513.33 mandates that elevation measurements and tolerance calculations be performed individually for every vehicle before the vehicle can be properly weighed with portable scales. (*State v. Reiger* [1978], 63 Ohio App.2d 135, 141, 17 O.O.3d 332, 336, 409 N.E.2d 1037, 1042, followed.)"

In *Dryer*, the facts show that although the officer "checked and determined the elevation measurements and tolerance calculations for the entire area within which the trucks were to be weighed" he did not know the precise distance between the axles on the defendant's vehicle. The individual elevation measurements and tolerance calculations were not *individually* performed for that portion of the roadway between the spots where the axles and/or portable scales were located while the defendant's vehicle was being weighed. *Dryer, supra,* 36 Ohio App.3d at 194, 521 N.E.2d at 843. There the court held that because these measurements had not been taken individually, there was insufficient evidence of the defendant's guilt.

In this case, the court, after an extensive colloquy with Sergeant Dewey, found that "the state established beyond a reasonable doubt that the terrain was within the parameters contained within Section 4513.33 of the Ohio Revised Code, specifically that the difference in elevation between the wheels on any one axle did not exceed two inches, and that the difference in elevation between axles being weighed did not exceed one quarter inch per foot of the distance between said axles."

"A reviewing court will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, at syllabus.

This rule is equally applicable in bench trial proceedings in that judgments of conviction and sentence will withstand a weight-of-the-evidence attack where, "after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, the trier of fact could have found that all the essential elements of the offense had been proven beyond a reasonable doubt." *State v. Wardlow* (1985), 20 Ohio App.3d 1, 2–3, 20 OBR 1, 2–3, 484 N.E.2d 276, 278.

■ We find that the court's judgment was against the manifest weight of the evidence. Although the court questioned Sergeant Dewey extensively in order to ascertain that the requirements of R.C. 4513.33 had been met, Sergeant Dewey could not testify as to how far apart appellant's truck axles were. In fact, Sergeant Dewey testified that he thought that distance to be

irrelevant because he was not testing for an axle overload. Sergeant Dewey testified:

"Q. How far apart were the axles on Defendant's vehicle?

"A. Do you mean between here and here?

"Q. Yes.

"A. Irrelevant because this wasn't for an axle overload.

" * * *

"THE COURT: Can you answer it?

"THE WITNESS: I can't answer it.

"THE COURT: Do you have it on your—

"THE WITNESS: No because, like I said the registered distance is between here and here on the tire and it was worn off his tire. The only time this distance is relevant is in an axle overload."

This is important since R.C. 4513.33 prohibits an elevation variance exceeding one-fourth inch per foot of the total distance between axles. Furthermore, Sergeant Dewey testified that he "just put the level down at different spots checking for levelness * * * at random." Again, Sergeant Dewey testified:

"A. I just put the level down at different spots checking for levelness.

"Q. At random?

"A. Yes, at random."

Finally, Sergeant Dewey never said the area was "level," he said " * * * I could testify to the fact that they were within two inches." This is insufficient to establish compliance with R.C. 4513.33 without some testimony indicating that the eight-foot measurements overlapped or were made end to end.

Since the evidence table did not establish that the state met the requirements of R.C. 4513.33, appellant's second assignment of error is well taken.

The judgment of the trial court is reversed and final judgment is entered for appellant.

*Judgment reversed.*

FORD, J., concurs.

HOFSTETTER, J., dissents.

EDWIN T. HOFSTETTER, J., retired, of the Eleventh Appellate District, sitting by assignment.

EDWIN T. HOFSTETTER, Judge, dissenting.

I respectfully dissent from the majority opinion both generally as it concerns the duty of the parties in the preparation and filing of the record, and specifically as it concerns Assignment of Error Two.

Assignment of Error Two states the judgment of the trial court is against the manifest weight of the evidence.

My first concern is with the inaudible portions of the record. In closely reviewing the record, the docketing statement by the appellant indicates the appeal will include a weight of evidence challenge which, pursuant to App.R. 9(B), normally requires that a transcript of *all* relevant evidence be included. It follows then that if the entire transcript is not to be included, then the appellant must serve on the appellee a description of the parts of the transcript which he intends to include in the record as being relevant.

Loc.R. IV of the Eleventh District Court of Appeals requires that the transcript information, pursuant to App.R. 9(B) to be completed by the appellant, shall indicate what portion of the transcript has been ordered from the court reporter, and also that *a copy of said order should be attached.* This is necessary to alert not only the court, but the appellee as well. The record before us does not show what part of the transcript was to be prepared. It simply indicates that a partial transcript has been ordered. Although it noted that a copy of the order to the reporter is attached, *there is no copy.* Inasmuch as the acknowledgment of the court reporter was done only by telephone consent, we have no indication what testimony or whose was to be included in the record. With no copy of the order in the court's record, it is at least debatable as to whether the appellee ever learned from the appellant what portion was to be included.

Assuming, *arguendo,* that the appellee received a copy of the order, as required, the appellee had the right to assume that the portion transcribed was complete and accurate. It would appear that if a completely accurate partial transcript is *unavailable,* then App.R. 9(C) should come into play and permit the appellant to initiate appropriate action. This would then give both the appellant and appellee the opportunity to correct the record and to allow for its approval by the trial court. I find absolutely no duty on the part of the appellee to complete the inaudible portions of appellant's partial transcript other than by the above procedure.

Within the limitations of the transcript provided by the appellant, with its numerous inaudible sections of unknown length, I find it necessary to assume the regularity of the proceedings, and not to impose on the appellee a duty to

provide the inaudible portions of the transcript. This reasoning is especially pertinent when it is not clear from the record (absence of copy of the order to the reporter) whose or what testimony constituted the partial transcript. The burden, in my opinion, is on the appellant to adequately inform both this court and the appellee what the partial transcript consists of.

The appellee, in the absence of being informed by the appellant as to what portion of the testimony is to be transcribed for the record as required by App.R. 9(B), has no basis for requiring the appellant to furnish additional parts, as permitted by that rule.

The reporter, too, has a duty of compliance with App.R. 9(B)(8), which requires that she (as in this case) shall certify, when it involves a partial transcript (as here), as to the parts included and the parts excluded.

The placement by the majority of the burden of completing the record onto the appellee is, in my opinion, totally contrary to the rule and should not be condoned.

Coming now to Assignment of Error Two, I find the majority's reliance on *State v. Dryer* (1987), 36 Ohio App.3d 193, 521 N.E.2d 842, and *State v. Reiger* (1978), 63 Ohio App.2d 135, 17 O.O.3d 332, 409 N.E.2d 1037, misplaced. The testimony of the officer at pages seven and eight of the partial transcript and the judgment of the trial court clearly indicate full compliance with R.C. 4513.33. The officer used an eight-foot level and found the area within the tolerance required. The majority opinion states Sergeant Dewey could not testify as to how far apart appellant's truck axles were. That has no bearing on the case where the degree of levelness of the area has been ascertained and found to be within the limits and not to exceed ¼ inch per foot of the distance between the axles. If an area is level within the tolerance of ¼ inch per foot, it makes no difference that he could not testify as to how far apart appellant's truck axles were. If the degree of levelness (which was established) is within tolerance, distance between axles could be any distance, even the full length of the vehicle, as long as the difference in elevation between axles being weighed does not exceed ¼ inch per foot of the distance between said axles.

Determination of levelness with an eight-foot level both between the wheels on any one axle, or between axles, although requiring care, is a relatively simple process. If the level, when placed at random places from end to end or from side to side of the vehicle, does not exceed the limitation of ¼ inch per foot (or two inches total in the length of the eight-foot level), then compliance with the statute has been had.

R.C. 4513.33 does not detail in what manner the issue of levelness or compliance within the allowable deviation must be ascertained. The majority stated that Sergeant Dewey never said the area was "level." He didn't have to, as levelness is not a requirement as long as the deviation is within the ¼ inch per lineal foot limitation. Neither is there a requirement that either levelness or permissive deviation be determined by overlapping measurements. Nevertheless, the officer did state the following in response to where he laid the level:

"Under, like I say, the tires were here and I was up under here and another one across and another one across and—(inaudible)—periodic slots across, but they were all within, you know, I did them—(inaudible)—foot lengths."

We are unable to fill in the inaudible portions above. However, as noted earlier, in the absence of knowing what was said, and because of appellant's failure to comply with the appellate rules when weight of the evidence is involved, we must assume the regularity of the proceedings. One can only reasonably conclude from the officer's quote above that the degree of levelness or deviation therefrom was determined by overlapping readings within the eight-foot length of the level used to make the determination.

It should be noted that this dissent is not in conflict with any portion of the syllabus in *Reiger, supra,* on which the majority has so heavily relied. The third paragraph of that syllabus, as it concerns assignment number two, simply mandates that the elevation measurement and tolerance calculations be performed individually for every vehicle at the time of weighing. In my opinion, the mathematical determination of compliance with the elevation requirements, *in this case,* comports with the third paragraph of that syllabus.

I would affirm the trial court based on the record before us.