[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
ACCELERATED
 OPINION
This is an appeal from the Conneaut Municipal Court, Ashtabula County.[1] Appellant, Kenneth Sutliff, appeals from the trial court's rulings on his "Motion to Dismiss; Motion to Suppress; and Motion In Limine."
On April 1, 1997, at approximately 8:30 a.m., appellant was driving a commercial vehicle northbound on State Route 7 within the city limits of Conneaut, Ashtabula County, Ohio. At that time, Officer Henry Hayes ("Hayes"), a police officer who worked for the city of Conneaut for the past seventeen years, also was driving northbound on State Route 7. As Hayes followed appellant's vehicle, which he did for a quarter mile, he noticed that the tires on appellant's truck "were bulging in the rear tandems and the truck was emitting a large amount of black exhaust through the exhaust pipes." Hayes later testified that those two characteristics indicate when a vehicle is overweight. Therefore, Hayes conducted a traffic stop of appellant's vehicle. During the traffic stop, appellant produced his driver's license, registration, and bills of lading. After looking at these documents, Hayes advised appellant that he believed appellant's truck was overweight and directed appellant to proceed to the weigh scales located on Interstate 90, in the city of Conneaut. The subsequent weighing of appellant's vehicle indicated that it was overweight. Thus, Hayes issued appellant a citation for driving an overweight vehicle.
On April 21, 1997, appellant filed a "Motion to Dismiss; Motion to Suppress; and Motion in Limine." On April 29, 1997, the trial court held a hearing on appellant's motion to suppress the stop and subsequent weighing of his vehicle. In that motion, appellant argued that Hayes did not have a reasonable and articulable suspicion to stop appellant's vehicle and could not legally order that it be weighed. On May 7, 1997, the trial court entered judgment, finding that pursuant to R.C. 4513.33, Hayes had reason to believe appellant's vehicle was overweight at the time of the stop. Additionally, the court determined that Hayes' examination of appellant's driver's license, registration, and bills of lading, coupled with his previous observations, indicated that Hayes acted properly when he ordered appellant to drive his vehicle to the scales for weighing. Consequently, the court overruled appellant's motion to suppress and ordered the matter to proceed to a hearing on his motion in limine and motion to dismiss.
On May 19, 1997, the trial court held a hearing on appellant's motion in limine and motion to dismiss. During that hearing, the court heard testimony from a Load Limit Inspector with the Ohio State Highway Patrol; Jack Smith ("Smith"), who was employed with Mettler-Toledo Scales; Paul Cawood ("Cawood") and John O'Conner ("O'Conner"), who worked for the Department of Agriculture, Division of Weights and Measures; and Fred Bennett ("Bennett"), who is a licensed surveyor in Ohio. In addition, the court also admitted six exhibits, submitted by appellant, into evidence. On July 28, 1997, the court entered judgment, finding that pursuant to Cawood's testimony, the scales met the requirements of Handbook 44 of the National Institute of Standards and Technology ("NIST") because the required information, though not entirely contained on the scales themselves, was located on the nomenclature plate in the scale house. The court held that R.C. 4513.33 and the NIST only require "substantial compliance." Furthermore, the court held that the scales were in substantial compliance with the NIST identification requirements because the scales were part of a permanent facility and the nomenclature plate, thus, clearly corresponded to those scales. Therefore, the court overruled appellant's challenge to the identification markings on the scales.
In that judgment entry, the court also found that, contrary to appellant's contentions, R.C. 4513.33 was satisfied because the scales were substantially level and the approach was substantially straight. The court stated that it came to this conclusion based upon the testimony of Bennett, who had been a licensed surveyor in Ohio for the past fifteen years. Finally, the court overruled appellant's claim that, because the scales have not undergone a radio frequency interference ("RFI") survey, the evidence obtained from weighing his vehicle was inadmissible. The court decided against appellant because the NIST states that an RFI Survey need be conducted at a weighing station only when the presence of RFI has been verified and characterized. At the scales in question, the court found that there was no evidence that any RFI had ever been detected. Therefore, the court concluded that an RFI test need not be conducted. Accordingly, the trial court overruled appellant's motion in limine and motion to dismiss, and scheduled this matter for trial by a jury on August 20, 1997.
On August 1, 1997, appellant filed a motion with the trial court, requesting that it state its findings of fact. On September 11, 1997, the court entered judgment overruling appellant's motion. In the September 11, 1997 judgment entry, the court stated that its July 28, 1997 order complied with appellant's request and Crim.R. 12(E).
On September 23, 1997, appellant changed his plea from "not guilty," and entered a plea of "no contest." In a judgment entry filed on September 23, 1997, the trial court found appellant guilty and ordered him to pay a fine of $150 and costs by October 23, 1997. On October 21, 1997, appellant timely filed this notice of appeal asserting the following assignments of error:
 "[1.] The trial court erred in determining that the officer had `reason to believe' appellant's truck was overloaded.
 "[2.] The trial court erred in holding that the officer had probable cause to detain appellant to have his truck weighed.
 "[3.] The trial court erred in holding that the scales used to weigh appellant's vehicle were properly calibrated, maintained and sealed.
 "[4.] The trial court erred in failing to state its essential findings upon the record."
In the first assignment of error, appellant contends that bulging tires and black exhaust do not provide a sufficient basis for a police officer to "reasonably suspect" that a vehicle is overweight. Therefore, appellant argues that the facts demonstrate that his vehicle was randomly stopped based on a "mere hunch," which is unconstitutional.
R.C. 4513.33 states:
 "Any police officer having reason to believe that the weight of a vehicle and its load is unlawful may require the driver of said vehicle to stop and submit to a weighing of it by means of a * * * sealed scale, permanently installed in a fixed location * * *. The driver of such vehicle shall, if necessary, be directed to proceed to the nearest available of such sealed scales to accomplish the weighing, provided such scales are within three miles of the point where such vehicle is stopped. Any vehicle stopped in accordance with this section may be held by the police officer for a reasonable time only to accomplish the weighing as prescribed by this section. All scales used in determining the lawful weight of a vehicle and its load shall be annually compared by a municipal, county, or state sealer with the state standards or standards approved by the state and such scales shall not be sealed if they do not conform to the state standards or standards approved by the state."
In State v. Elder (1989), 65 Ohio App.3d 463, 466-467, this court held that the "reason to believe" language contained in R.C.4513.33 is tantamount to the concept of "reasonable suspicion," as understood in the context of Terry investigatory stops. Relevant case law reveals that a police officer need not show "probable cause" in order to stop a vehicle pursuant to a suspected R.C.4513.33 violation. Id. In Elder, a police officer stopped the appellant's vehicle after observing that the height of the appellant's load was higher than the sideboards of his truck; that the appellant was speeding, though there was no charge for speeding in that case; and the appellant's truck had difficulty climbing a hill. After stopping the appellant in Elder, but before weighing his vehicle, the police officer noticed that the vehicle was loaded with coal and the springs on the appellant's truck were bent, which the police officer testified, frequently indicates an overload. Based on the foregoing facts, this court held that the police officer had a "reason to believe" that the appellant's vehicle was overweight. Thus, we held that the facts were sufficient to permit the police officer to order the vehicle weighed.
In Streetsboro v. Bowling (Sept. 22, 1980), Portage App. No. 1007, unreported, a police officer stopped the appellant's vehicle and ordered it to be weighed. In that case, the police officer observed the appellant having trouble in bringing his vehicle to the speed of traffic and noticed that the vehicle was carrying two coils of metal. This court held that those facts were sufficient for a police officer to reasonably believe that the appellant's vehicle was overweight. Id. at 5. Therefore, this court concluded that the police officer's stop and subsequent weighing of the appellant's vehicle was proper. Id.
In Toledo v. Harris (1994), 99 Ohio App.3d 469, 471, two appellants appealed the trial court's overruling of their motions to suppress. In that case, both appellants were charged with operating overweight vehicles in violation of Toledo Municipal Code 339.08, which is identical to R.C. 4513.33. Both appellants entered pleas of no contest, were found guilty, and were sentenced. One of the appellants was stopped by a police officer and ordered to have his vehicle weighed because the police officer noticed that the appellant's tires were bulging and he heard the vehicle's engine straining. The Sixth District Court of Appeals held, "the stopping officer clearly articulated several observations from which he inferred that appellants' trucks were overweight. Given the officer's experience and general validity of the inferences he employed, we cannot now say that the suspicions which arose were unreasonable." Id. at 471. Accordingly, the court affirmed the judgment of the trial court.Id.
A case which demonstrates when a police officer improperly stops and weighs a motor vehicle is State v. Ehling (1973),36 Ohio App.2d 155. In that case, the court reversed the appellant's conviction for operating an overloaded truck because the policeman "testified that his sole purpose and duty that day was to weigh trucks; that his only reason for stopping defendant's vehicle was because his assignment that day was to weigh trucks; [and] that appellant had not violated nor was he in the process of violating any other laws at the time he was stopped; * * *." Id. at 156. Based on those facts, the appellate court determined that the police officer did not have any "reason to believe" that the appellant's truck was overloaded. Id. at 157.
Here, appellant was pulled over after Hayes followed his vehicle for a quarter mile, during which time he noticed that the tires on appellant's vehicle were bulging and large amounts of black smoke were being emitted from the exhaust pipes. The facts further indicate that in Hayes' seventeen years as a police officer, he has learned that those characteristics indicate when a vehicle is overweight. After stopping the vehicle and inspecting appellant's driver's license, registration, and bills of lading, he ordered appellant to have his vehicle weighed. Based on Elder,Bowling, and Harris, these facts were sufficient for Hayes to have believed that appellant's vehicle was overweight, and permit the stopping and subsequent weighing of appellant's vehicle. Therefore, appellant's first assignment of error is not well-taken.
In the second assignment of error, appellant argues that even if the facts are sufficient to justify the initial stop, they do not establish the probable cause necessary to detain appellant and force his vehicle to be weighed.
As previously stated by this court in Elder, a police officer does not need probable cause to stop a vehicle for a suspected R.C. 4513.33 violation. 65 Ohio App.3d at 466-467. Rather, only a "reason to believe" is necessary. R.C. 4513.33; Elder, 65 Ohio App. 3
d at 466-467. Furthermore, "[p]robable cause is not required for an officer to order a vehicle weighed." State v. Back (May 22, 1998), Sandusky App. No. S-97-051, unreported, at 3, 1998 Ohio App. Lexis 2232; see, also, Elder, 65 Ohio App.3d at 466-467;Bowling, supra.
Contrary to appellant's contention, a police officer only is required to have a reasonable belief, not probable cause, that a particular vehicle is overloaded, in order to stop that vehicle and direct it to be weighed. Pursuant to our analysis under the first assignment of error defining the test for "reasonable belief," the second assignment of error is meritless.
In appellant's third assignment of error, he contends that R.C.4513.33 and the NIST handbook require strict compliance in sealing and calibrating weigh station scales. Also, appellant argues that appellee has not strictly complied with R.C. 4513.33 or the NIST handbook, because the scale serial number does not contain a prefix prefaced by words, an abbreviation, or a symbol, as required by section 1.10, G-S.1 of the NIST handbook; a "shift test" was not properly performed, so the scales were not properly calibrated; an RFI survey was not performed; and the last fifteen feet of the approach to the scales sloped downward, violating the requirement that the approach be on the same plane as the scale.
Appellant's assertion that R.C. 4513.33 requires strict compliance, pursuant to State v. Gribble (1970), 24 Ohio St.2d 85, is completely unfounded. Nowhere in Gribble does the court mandate strict compliance with R.C. 4513.33. In fact, the court held that the state only needs to prove "that the scale used in weighing the vehicle had affixed to it the type of official seal customarily employed by municipal, county or state sealers in the performance of their duties under R.C. 4513.33 * * *." Id. at 88. If the seal is thus described, "the law rebuttably presumes that the sealer performed his statutory duties in accordance with the requirements of that section." Id. at 89. More importantly, the Supreme Court of Ohio recently held that R.C. 4513.33 only requires substantial compliance. State v. Parker (1994), 68 Ohio St.3d 283,287.
The record demonstrates that Cawood and O'Conner, both of whom are inspectors for the Ohio Department of Agriculture, Division of Weights and Measures, sealed the scales in question on January 8, 1997, with the customary state seal. The record further evidences that the scale is part of a permanently fixed facility. Finally, section 1.10, G-S.1 states that the serial number and its prefix "shall be clearly and permanently marked for the purposes ofidentification * * *." (Emphasis added.) National Institute of Standards and Technology Handbook 44, 1997 Edition (1996) 1-2, Section 1.10, G-S.1. Based on the fact that the scale is affixed to a permanent facility, and is not a portable scale, the serial number substantially complies with section 1.10, G-S.1, because it clearly identifies the scale.
In regard to appellant's contention that a "shift test" was not properly performed, appellee's witnesses, Cawood and O'Conner, testified that they did a proper shift test. Furthermore, appellant's own witness, Smith, who is a supervisor with Mettler-Toledo scales, testified that appellee's inspectors did a shift test. Additionally, Smith testified that the scale was "weighing very well," and stated that there was nothing to indicate that there were any problems with it.
The NIST requires that "[a]n RFI test shall be conducted at a given installation when the presence of RFI has been verified and characterized if those conditions are considered `usual and customary.'" National Institute of Standards and Technology Handbook 44, 2-16, Section 2.20, N.1.6. The transcript demonstrates that Cawood and O'Conner performed an RFI sensitivity test, which showed that no RFI was detected. Consequently, no RFI was verified and an RFI test was, therefore, not necessary. Moreover, appellant failed to introduce any evidence indicating that RFI was present.
While R.C. 4513.33 requires "a straight approach [to the scale] in the same plane as the platform," neither it nor the NIST specify what constitutes "in the same plane." However, Cawood testified that each state establishes its own requirements concerning what slope angle is permitted on the approach in order for it to be "in the same plane," as specified in R.C. 4513.33. Cawood further testified that the State of Ohio permits a slope of no more than three-quarters of an inch per foot; which appellant did not contradict. Moreover, appellant's witness, Bennett, who has been a licensed surveyor in Ohio for the past fifteen years, testified that the slope on the approach to the scales in question was not more than six-hundredths of a foot at thirty feet from the platform, which is far less than three-quarters of an inch per foot.
Based on the previous discussion, appellant's third assignment of error is not well-taken.
In the fourth assignment of error, appellant claims that the trial court committed error when it overruled his August 1, 1997 motion for findings of fact, because the trial court's July 28, 1997 judgment entry only stated conclusory statements, not specific findings of fact.
A review of the trial court's July 28, 1997 judgment entry reveals that the court wrote nearly five pages of specific findings of fact and conclusions of law. In that entry, the trial court discussed each claim made by appellant and referenced case law and evidence contained in the record to support its conclusions. Accordingly, appellant's fourth assignment of error is meritless.
For the foregoing reasons, appellant's assignments of error are without merit, and the judgment of the Conneaut Municipal Court is affirmed. _______________________________________ PRESIDING JUDGE DONALD R. FORD
CHRISTLEY, J.,
MAHONEY, J., (EDWARD), Ret., Ninth Appellate District, sitting by assignment, concur.
[1] The only reference in the record concerning the charge to which appellant pleaded "no contest," appears on the docket. On that page, it says that appellant was charged with violating "339.01 Overwt/Sz Veh on State Route Orig." We interpret this to mean Conneaut Municipal Ordinance 339.01.