DECISION AND JUDGMENT ENTRY
Appellant Carolyn E. Knight, n.k.a. Carolyn E. Boley, appeals the property distribution portion of a divorce decree issued by the Washington County Court of Common Pleas. She assigns the following errors:
 I. The Trial Court abused its discretion and made findings against the manifest weight of the evidence in the identification of marital property as separate property.
 II. The valuation and division of the marital property by trial court [sic] should be reversed for the reason that the trial court abused its discretion in making the valuation and division.
Finding appellant's assignments of error to be meritorious, we reverse and remand this matter to the trial court.
 I.
Appellant and appellee Dale G. Knight married in October 1993. Prior to the marriage, the parties entered into an antenuptial agreement. The agreement provided that neither party would have a claim to the separate property of the other party, or to proceeds resulting from the sale of the separate property. Exhibit A of the agreement listed the property owned by appellant as: (1) House located at Route 7, Marietta, Ohio ($70,000), (2) 1986 Oldsmobile automobile, (3) savings Account at First National Bank, Williamstown, West Virginia ($87,000), and (4) Possible pension from Eveready. Appellee's assets were listed as: (1) 1989 Chevrolet truck, (2) 21' Glastron 1978 boat and motor, and (3) $5,000 cash. The agreement further provided that the parties intended the agreement to apply to all premarital property, whether listed in Exhibit A or not. In the event of a divorce, any money in separate accounts would remain the sole property of the party whose name was on the account, provided the funds could be traced to the party's premarital property. All joint accounts would be considered marital property. The parties also agreed that property acquired during the marriage would be held jointly and not affected by the agreement, unless the property was acquired with a party's separate funds.
The parties separated in June 1998, with each party ultimately seeking a divorce. At a hearing in April 1999, appellee testified that he and appellant agreed to build a house during their marriage. Appellee further testified that he contributed approximately $24,000 to the new home and appellant contributed approximately $56,400. Appellee testified that he contributed a great deal of labor towards building the new home, but appellant also assisted to a lesser extent. Appellee stated that the house is not completed.
Appellee terrified that he wrote checks, which were drawn on the couple's joint checking account, for various items purchased during construction. He then listed the dollar amounts and purchase description in a spiral notebook, attributing the payment to either himself or appellant. Appellee introduced Exhibit 1, thirteen pages from a notebook delineating the building expenses attributed to each party, and Exhibit 2, copies of the checks written on the joint account which covered the building expenses.
Appellee testified that he owned a boat, a pickup truck and furniture when he married appellant. During the marriage, he sold the boat and placed the proceeds in the joint checking account. Appellee used these proceeds to make a down payment on a jeep and made payments on the jeep loan for two years. Appellee eventually sold the jeep for $16,000, paid off the loan and deposited the remainder of the proceeds into the joint checking account. Appellee testified that he did not know the total equity from the sale of the jeep, but believed it to be in excess of $7000.
Appellee testified that he later used $6000 of these funds to purchase the land on which the new house is built and the remainder also went towards the house. Appellee further testified that he did not recall how much money he brought into the marriage. He testified that whatever money he had at the time the parties married was deposited into the joint checking account and used to pay expenses during the marriage. Appellee provided no documentation for any of the transactions involving the boat, the jeep or the premarital funds.
Appellee requested that all his premarital property be returned to him as well as one of two VCRs acquired during the marriage. Appellee further requested that equipment he uses in his business that was acquired during the marriage be awarded to him. Appellee testified that he owns two IRA accounts. The first account was opened sometime prior to April 15, 1998, with a deposit of $2000, and has earned approximately $200 in interest. The second account was opened in 1999 and contains the initial deposit of $2000. Appellee asked the court to award him both IRA accounts. Appellee also testified that after he and appellant separated, he withdrew approximately $3300 from their joint checking account, but later paid a bill related to the house in the amount of $700 out of that money.[1]
Appellant testified that she assisted appellee in building the new home. She further testified that the funds that were spent on the house came from the joint checking account so she could not understand why appellee distinguished between what he paid for and what she paid for concerning the construction of the house. Appellant testified that the surround sound, television and dining room table are marital property which she wanted awarded to her. Appellant testified that she had no objection to appellee receiving the shredder and one VCR.
Following the hearing, the trial court issued oral findings that were later reduced to writing. In its termination entry, the trial court granted the divorce. The court found that the antenuptial agreement was valid and that each party was entitled to their respective separate property. The court also found that the real estate was purchased during the marriage and that appellee contributed $24,000 and appellant contributed $56,400 to its purchase and improvements. The court declined to value the labor performed by either party towards the building of the house. The trial court further ordered the house to be sold, with each party receiving the amount he or she contributed and the excess proceeds to be split equally. If, however, the house sold for less than the amount contributed, appellant would receive 70% and appellee would receive 30% of the net proceeds.
The court further found that appellee was entitled to retain his business, that each party would retain the vehicle titled in his or her name, and that each party would retain any bank accounts, pensions or other incomes in his or her own name. The court awarded appellee one VCR and the shredder, and confirmed the division of personal property already made. Appellant filed a timely appeal from this entry.
 II.
Preliminarily, we note that in appellee's brief, he attempts to cross appeal by asserting two assignments of error not raised by appellant. Specifically, appellee asserts that the trial court abused its discretion in failing to award appellee the value of the labor he contributed during the marriage and in identifying certain separate property as marital property.
App.R. 3(C) delineates the method by which cross-appeals must be filed. "A person who intends to defend a judgment or order against an appeal taken by an appellant and who alsoseeks to change the judgment or order or, in the event the judgment or order may be reversed or modified, an interlocutory ruling merged into the judgment or order, shallfile a notice of cross appeal within the time allowed by App.R. 4." (Emphasis added.) App.R. 4(C)(1). If an appellee intends to defend the judgment, even if on a different ground, but does not seek to change the judgment or order, he is not required to file a notice of cross appeal. App.R. 4(C)(2)
Here, appellee is not merely defending the judgment, but is seeking remand on issues that were not decided in his favor. Therefore, pursuant to App.R. 4(C), appellee was required to file a cross appeal. As appellee did not file a notice of cross appeal, the assignments of error raised in his brief are not properly before this Court and will not be addressed.
 III.
In her first assignment of error, appellant asserts that the trial court abused its discretion in crediting appellee with a non-marital contribution of $24,000 towards the construction of the new home as appellee failed to trace the source of the money to premarital funds. Appellant submits that the $24,000 is marital property and must be distributed as such. Appellant also argues that the court awarded appellee certain property without making a determination as to whether it was marital or separate property. In particular, appellant asserts that the IRA account from 1998, the business equipment and the money from the joint checking account are marital assets and should be distributed accordingly. In her second assignment of error, appellant asserts that the trial court made no specific findings regarding the value of the distributed assets. Appellant argues that the distribution of assets was not equitable and, therefore, the trial court abused its discretion.
Appellee contends that while there is no accounting of certain factors relating to the sale of the boat and the jeep, he sufficiently traced his premarital funds from the boat to the real estate. Appellee agrees that the trial court failed to render its findings in sufficient detail, precluding meaningful review.
We examine the assignments of error together.
 A.
Before addressing appellant's specific assignments of error, however, we note some basic principles of law relating to property distribution. Trial courts are required to divide marital and separate property equitably between the spouses. R.C. 3105.171(B). This requires, in most cases, that marital property be divided equally. Id. at (C)(1). However, if equal division would produce an inequitable result, the property must be divided in such a way as the court determines to be equitable. Id. Separate property is to be distributed to the spouse who brought that property into the marriage, except as further indicated in the statute. Id. at (D). As the trial court possesses a great deal of discretion in attaining an equitable distribution, the court's division of property shall not be reversed absent an abuse of discretion. See, e.g., Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131;Worthington v. Worthington (1986), 21 Ohio St.3d 73, 76;Martin v. Martin (1985), 18 Ohio St.3d 292, 294-295. An abuse of discretion connotes more than an error of judgment or law; it suggests an attitude on the part of the court which is unreasonable, arbitrary or unconscionable. See Masters v.Masters (1994), 69 Ohio St.3d 83, 85; Rock v. Cabral (1993),67 Ohio St.3d 108, 112; Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
Before the trial court reaches the stage of distributing property, it must first determine what constitutes marital property and what constitutes separate property. R.C.3105.171(B). This characterization is a factual inquiry and is reviewed under a manifest weight of the evidence standard.Foster v. Foster (Mar. 9, 1993), Pike App. No. 490, unreported. Furthermore, the provisions of R.C. 3105.171
require that a monetary value be placed on every contested asset of the parties in a divorce proceeding. See, e.g.,Pawlowski v. Pawlowski (1992), 83 Ohio App.3d 794, 799; Goodev. Goode (1991), 70 Ohio App.3d 125, 132. A specific valuation of both marital and separate property follows from the mandate that all property be divided equitably. Wright v.Wright (Nov. 10, 1994), Hocking App. No. 94CA02, unreported.
"Under previous law, the commingling of separate assets and marital property could destroy the character of the separate property, thus transmuting the separate property into marital property." Rinehart v. Rinehart (Dec. 13, 1995), Gallia App. Nos. 94CA26 and 95CA06, unreported. However, R.C.3105.171(A)(6)(b) now provides that the commingling of separate and marital property does not destroy the character of the separate property unless its identity as separate property is not "traceable." Peck v. Peck (1994), 96 Ohio App.3d 731,734; Freytag v. Freytag (Aug. 15, 1994), Butler App. No. CA93-11-223, unreported. Thus, the key question is whether an asset may be traced to a separate property source. Peck at 734. The party seeking to establish an asset or a portion thereof as his or her own separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to the separate property. Id. Without making a determination as to the "traceability" of a disputed asset as required by R.C. 3105.171(A)(6)(b), the trial court cannot determine whether the asset is separate or marital property, and thus cannot comply with R.C. 3105.171(B).
To summarize, we conclude that first, the trial court is under a mandatory duty to value and classify the contested property as either marital or separate before distributing it. See Pawlowsksi, supra, at 799 and Peck, supra, at 734. This duty necessarily involves evaluating the evidence regarding the traceability of the property where it is an issue.Freytag, supra. Next, property which is classified as separate property must be awarded to the individual spouse who owns it, unless another portion of R.C. 3105.171 provides otherwise. See Peck, supra, at 734. Finally, a court must comply with its duty by making findings in sufficient detail to allow for meaningful appellate review of its decision. Cf.Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, paragraph two of the syllabus; Gibson v. Gibson (1993), 87 Ohio App.3d 426,433.
Neither party argues that the antenuptial agreement has any effect on our determination of the assignments of error. Further, it appears that the agreement provides for virtually the same protections that the law does, namely, allowing each party to retain his or her premarital property to the extent it, or the funds derived from its sale, still exists and characterizing property acquired during the marriage as marital property.
 B.
In her first assignment of error, appellant correctly asserts that the trial court erred in crediting appellee with a contribution of $24,000 towards the house without tracing the source of the money to premarital funds. As this Court previously held in Rhinehart, "[a] trial court which characterizes assets as separate property without attempting to trace the assets abuses its discretion." Supra, citingFreytag, supra. In Freytag, supra, the Twelfth District held that the trial court erred in awarding $75,000 to the appellee as his separate property without tracing it to his inheritance. The court noted that, "[a]lthough money is fungible, the commingling of marital funds with appellee's inheritance does not necessarily taint the entire inheritance. By the same token, it is arbitrary to declare an inheritance as separate property when a portion of that inheritance has been consistently shuffled between down payments on marital residences and household and family expenses. * * * [T]he trial court abused its discretion when it declared appellee's inheritance to be his separate property without attempting to trace the amount which is identifiably separate."
Here, appellee's testimony demonstrates that he sold his premarital property (his boat), deposited the proceeds in a joint account, withdrew the proceeds and purchased a jeep, made payments on the jeep for two years, sold the jeep, repaid the loan with the proceeds from the sale, and deposited the excess money in the marital account. He then used funds from the joint account to build the house. As to the funds appellee asserts he brought into the marriage, appellee testified that they were deposited into the joint checking account and spent on expenses during the marriage.
Even if appellee's testimony is credited, he proffers no explanation for his determination that he invested $24,000 of separate funds into the house. Appellee testified that he does not recall the loan balance on the jeep and is unsure of the net proceeds from the sale of the jeep. Appellee never testified regarding the amount of money he received when he sold his boat or the amount of marital funds used to purchase and make payments on the jeep. Without this information, it is impossible to determine the amount of appellee's premarital assets in existence prior to the building of the house, much less to trace the assets into the house.[2]
Appellant has provided this Court with a portion of the record relating to appellee's contention that he is entitled to $24,000 of the marital property. Because appellee has not made any attempt to supplement this record and the trial court did not make a specific finding tracing the $24,000 to appellee's premarital property, we conclude that the record is sufficient to sustain appellant's first assignment of error. To assume that the missing portion of the transcript supports the trial court's finding that appellee is entitled to $24,000 as separate property would require this Court to turn a blind eye to the evidence refuting such a finding. Furthermore, the trial court specifically stated that it was unable to trace the husband's separate property given the evidence presented at trial. Such a finding precludes awarding the appellee the sum of $24,000 as separate property.
Appellant also alleges that the trial court erred in not finding the 1998 IRA account, the business equipment, and the money from the joint checking account to be marital property and in failing to make findings regarding the value of each piece of property.[3] In its judgment entry, the trial court awarded this property to appellee without first designating it as either marital or separate property and without making findings as to the valuation of the property. As stated previously, before distributing property, a trial court must first determine what constitutes marital property and what constitutes separate property. R.C. 3105.171(B). The court must also place a monetary value on every contested asset.Wright, supra. As the court failed to designate the contested property as marital or separate and failed to determine the value of each piece of contested property, we cannot review the propriety of the property distribution and must reverse the court's judgment. See id. (holding that where trial court fails to assign a value to contested property an appellate court cannot properly determine whether the trial court made a fair and equitable distribution of the contested marital property).
In sum, the trial court's failure to determine whether the contested property was separate or marital property and failure to make findings regarding the traceability of the $24,000 awarded to appellee as separate property is an abuse of discretion. Therefore, we sustain appellant's first assignment of error. The trial court's failure to make findings regarding the value of the contested assets is also error. Appellant's second assignment of error is also sustained. As a result of these errors, it is impossible for this Court to review the propriety of the distribution of assets.
We remand this cause to the trial court with instructions to classify the contested property as separate or marital. In making this determination, the court must make findings regarding the traceability of the separate property to the spouse's premarital property. Pursuant to the antenuptial agreement, each party is entitled to his or her premarital property, or the proceeds derived therefrom, if still in existence. The court must also make findings as to the value of the contested marital property before it distributes it.
JUDGMENT REVERSED AND REMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED AND REMANDED and that Appellant recover of Appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
KLINE, P.J. EVANS, J.: Concur in Judgment and Opinion.
For the Court
 BY: ________________________ WILLIAM H. HARSHA, JUDGE
[1] At this point in the transcript, a portion of the proceedings is omitted. The transcript states that, "part of the proceedings is missing from the tapes, including, but not limited to, the beginning of the direct examination of Carolyn Knight." We will address the effect of the missing portion of the transcript, infra. It appears that cross-examination of appellee was concluded or near conclusion at this point in the transcript. However, we are uncertain as to whether any re-direct examination occurred and how much of appellant's direct testimony is missing from the record as the parties have made no attempt to correct the record.
[2] As previously noted, a portion of the hearing transcript is missing. An appellant has the responsibility of providing the reviewing court with a record of the facts, testimony and evidentiary matters which are necessary to support the appellant's assignments of error. Ham v.Park (1996), 110 Ohio App.3d 803, 809, citing Wozniak v.Wozniak (1993), 90 Ohio App.3d 400, 409; Volodkevich v.Volodkevich (1989), 48 Ohio App.3d 313, 314. If an appellant intends to argue on appeal that a trial court's factual finding is contrary to the manifest weight of the evidence, he must ensure that a transcript of all relevant evidence is included with the record. Robertsv. Payton (1995), 105 Ohio App.3d 597, 600. When the appellant fails to satisfy this obligation, an appellate court must presume that the evidence supported the trial court's findings. Id., citing Dragojevic-Wiczen v.Wiczen (1995), 101 Ohio App.3d 152, 155-156.
Here, appellant requested a transcript of the hearing and later learned that a portion of the proceeding had not been recorded and, Therefore, was not included in the transcript. Appellant requested additional time in which to file a statement describing the missing testimony pursuant to App.R. 9(C). However, appellant never filed such a statement and, in her brief, indicates that she is basing her appeal solely on the existing record.
In his brief, appellee states that "much of the information needed for an appropriate determination of the issues before this Court are [sic] lost through the inexplicable disappearance of a substantial portion of testimony of these proceedings." However, appellee defends the trial court's determination that he is entitled to the $24,000 award from the proceeds of the sale of the house solely on his testimony in the record before us.
Furthermore, appellee did not make any attempt to supplement the record. Pursuant to App.R. 9(E), "If anything material to either party is omitted from the record by error or accident * * *, the parties by stipulation, or the trial court, either before or after the record is transmitted to the court of appeals, on proper suggestion or of its own initiative, may direct that the omission * * * be corrected, and if necessary that a supplemental record be certified and transmitted. All other questions as to the form and content of the record shall be presented to the court of appeals." The purpose of this rule is to allow the parties to correct errors which are not discovered until after the record on appeal has been transmitted to the court of appeals. App.R. 9(E), Author's Commentary.
Appellee never indicated how the missing portion of the record would be material to our determination of the assignments of error raised by appellant or requested that the parties or the trial court be permitted to attempt to re-create or summarize the missing portion of the transcript. As appellee has not indicated that the missing portions of the transcript support his position and we find support for appellant's assignments of errors in the available record, we accept the record as it is before us. See State v. Elder (1989), 65 Ohio App.3d 463, 465 (holding that if portions of record are omitted or unavailable which support appellee's position, it is up to appellee to provide the portions to the court).
[3] The trial court never expressly stated that the new home was marital property. However, the court did state that the home was purchased during the marriage and neither party disputes that it is marital property.