THE STATE OF OHIO, APPELLANT, *v.*
WELLS, APPELLEE.
THE STATE OF OHIO, APPELLANT, *v.*
VOLSCHOW, APPELLEE.

(Nos. WD-82-69 and -70—Decided
August 5, 1983.)

*Mr. William F. Hayes,* city prosecutor, for appellant.
*Mr. Thomas W. Heintschel* and *Mr. Michael M. Briley,* for appellees.

HANDWORK, J. These companion cases are before the court on appeal from an order of the Perrysburg Municipal Court granting defendants-appellees' motions to suppress certain evidence with respect to vehicle overweight charges against them. Since these cases involve the same facts and raise identical legal issues, they will be treated together for the purposes of this appeal.

## I

The pertinent facts are not in dispute. Defendants-appellees, Clifford Wells and Randy Volschow, were issued citations in which they were charged with exceeding proper load-weight limitations for their tractor-trailer rigs in violation of R.C. 5577.04. Appellees thereafter filed motions to suppress on September 23, 1982. A consolidated hearing on said motions was held on October 5, 1982. Appellees sought to suppress all evidence of the weighing or weight of their trucks on the grounds that, first, the police officer who initially stopped them did so without having any "reason to believe" that the vehicles were overweight, and, second, that their detention for two hours and fourteen minutes prior to the weighing of their vehicles constituted an unreasonably long delay, all in contravention of R.C. 4513.33.

Nowhere in appellees' written motions was there any allegation that the stopping or weighing of their vehicles violated any constitutional strictures, state or federal. At the suppression hearing, however, the trial court, over the prosecutor's objection, permitted counsel for appellees to argue that *constitutional* violations had also occurred, though in their motions to suppress, appellees alleged only that police officers had violated certain provisions of *state law,* not their *constitutional* rights.

The trial court made findings of fact based upon certain stipulations of fact which were entered into at the hearing, and also based upon testimony from prosecution and defense witnesses. The stipulations are as follows:

"1. That on Friday, June 25, 1982, at 10:11 p.m. defendants' trucks were stopped by Officers Cuthbertson and Williams of the Northwood Police Department.

"2. That the vehicles of defendants were stopped solely for the purpose of weighing said vehicles and the loads which they contained.

"3. That the loads which the defendants were carrying on their vehicles were completely covered with tarps and were not visible to the officers.

"4. That Trooper Click of the Ohio Highway Patrol arrived with the portable scales to accomplish the weighing of defendants' vehicles no earlier than 12:24 a.m. on June 26, 1982.

"5. That the weighing of defendants' vehicles was completed at 3:31 a.m. on June 26, 1982."

The trial court, on the record, gave an oral statement of certain additional facts which may be summarized as follows. Officer Harold Cuthbertson observed two tractor-trailer rigs, known in trucker's parlance as "Michigan mule trains," proceeding toward the intersection of Wales and Oregon Roads in the city of Northwood. Each tractor-trailer rig was supported by eleven axles containing a total of forty-two wheels. The officer observed that the freight on each trailer appeared to consist of round, bulky objects covered entirely by tarps. Despite the tarps, he could discern that the covered materials were circular and were unequal in their diameters.[1] The officer testified that the trucks were "pulling hard," which he explained was characteristic of vehicles that were straining or laboring under extreme weight. He also testified that he heard the tires making "roaring noises," which he also explained was typically caused by pressure from a heavy load. Cuthbertson further testified that his suspicions were aroused by the vehicles' speed of twenty-five miles per hour in a thirty-five mile per hour zone and by the fact that they were being driven at night. It was brought out in Cuthbertson's testimony that he once worked as a truck driver for several years before becoming a police officer and that he had operated similar tractor-trailer units. He testified that "Michigan mule trains" are a much heavier vehicle than

---

[1] These objects were later discovered to be steel coils of various weights and sizes.

normal trucks, which have only five axles and eighteen wheels. Having more "rig weight" than ordinary tractor-trailers, a "Michigan mule train" must consequently haul *less* load-weight in order to conform to legal gross-load limitations. Based upon what he observed, it was Officer Cuthbertson's opinion that appellees' vehicles were well in excess of those limits. Cuthbertson also testified that during his thirteen years as a law enforcement officer, it was his experience that overweight trucks were frequently driven at night in the Northwood area to evade detection by police and that the loads carried thereon were usually covered to hinder observation. Officer Cuthbertson radioed Officer Williams to assist him in stopping appellees' vehicles. Eventually, five Northwood police officers detained the two vehicles until Trooper Click of the Ohio Highway Patrol arrived with the portable scales to weigh the trucks. The weighing of both vehicles was not completed until 3:31 a.m. on June 26, 1982, five hours and twenty minutes after they were initially stopped.

At the close of the hearing, the trial court granted appellees' motions to suppress and entered an order with respect thereto. From the trial court's suppression order, plaintiff-appellant, state of Ohio, has brought this appeal.

## II

Appellant raises two assignments of error, which are as follows:

"The trial court committed prejudicial error in ruling the defendants could raise the constitutional issues at the hearing.

"The exclusionary rule does not lie for violations of state statutory law when there is no violation of constitutional rights."

In support of its first assignment of error, appellant cites the fact that appellees' written motions, filed with the trial court, raised *only* the issue of whether state statutory law was violated when the officer stopped, detained and weighed their trucks. The arguments in the accompanying memoranda focused upon certain provisions of R.C. 4513.33. Therefore, appellant argues, the trial court should not have allowed appellees' counsel to raise and argue *constitutional* issues that were not originally advanced in the written motion.

Crim. R. 12 states, in pertinent part:

"(B) Pretrial motions. Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. *The following must be raised before trial:*

"* * *

"(3) *Motions to suppress evidence,* including but not limited to statements and identification testimony, *on the ground that it was illegally obtained.* Such motions shall be filed in the trial court only;

"* * *

"(G) Effect of failure to raise defenses or objections. *Failure by the defendant to raise defenses or objections* or to make requests *which must be made prior to trial,* at the time set by the court pursuant to subdivision (C), or prior to any extension thereof made by the court, *shall constitute waiver thereof,* but the court for good cause shown may grant relief from the waiver." (Emphasis added.)

Crim. R. 47, motions, states, in pertinent part:

"* * * A motion, other than one made during trial or hearing, shall be in writing unless the court permits it to be made orally."

Based upon a combined reading of Crim. R. 12(B)(3) and 47, we hold that the trial court, in its discretion, may permit defense counsel to supplement orally a previously filed motion to suppress if the issues raised by that motion, and those sought to be raised during the hearing, stem from the same (or common) facts and are so interrelated that disposition of

those issues together would be reasonable and the prosecution would not be prejudiced thereby. Even if the court finds that the prosecution would not be prejudiced by a decision to hear and decide the supplemental issue, the court, if requested to do so, may grant a reasonable continuance to enable the prosecution to prepare and file a responsive memorandum addressing the supplemental issue.

Here, the supplemental issue involved the *constitutional* aspects of the stop and detention of appellees' trucks. These issues were not raised in the written motions. Yet, the record also indicates that appellant never filed any responsive memorandum, at any time, in opposition to appellees' motions to suppress. The prosecutor apparently felt content to wait until the suppression hearing to challenge the basis for appellees' motions. In any event, appellant has not demonstrated that it was prejudiced by the trial court's decision to hear and decide the supplemental constitutional issue. Had the prosecutor originally filed a memorandum in response to the state law issues raised by appellees' written motions, a reasonable continuance might have been granted to permit the state to respond to the constitutional issue which appellees' counsel sought to raise at the hearing. Moreover, the suppression hearing was, by definition, a hearing on a *pretrial motion* to exclude illegally secured evidence. The written motions, and counsel's oral statements addressing the supplemental issue, were all made *before trial.* See Crim. R. 12(B). Appellant's reference to Crim. R. 12(G) is therefore inapplicable. Appellees did not "waive" their right to raise constitutional questions. Accordingly, no prejudice or abuse of discretion having been shown, appellant's first assignment of error is not well-taken.

### III

#### A

In support of its second assignment of error, appellant cites the case of *Kettering*

v. *Hollen* (1980), 64 Ohio St. 2d 232 [18 O.O.3d 435], for the proposition that the exclusionary rule is not to be applied to suppress evidence obtained by police in violation of *state statutory law* unless there is also an attendant violation of some *constitutional* right. On the facts *sub judice,* appellant argues that the exclusionary rule should not be employed to suppress evidence of a load-weight violation (see R.C. 5577.04) even though the arresting officer detained the driver and his vehicle for an "unreasonable" length of time, as implicitly proscribed by R.C. 4513.33.

R.C. 4513.33 provides, in pertinent part:

"Any police officer having *reason to believe* that the weight of a vehicle and its load is unlawful may require the driver of said vehicle to stop and submit to a weighing of it * * *. Any vehicle stopped in accordance with this section may be held by the police officer for *a reasonable time only to accomplish the weighing* as prescribed by this section. * * *" (Emphasis added.)

During the suppression hearing, appellees initially contended that Officer Cuthbertson had no "reason to believe" their trucks were overweight prior to stopping them. The trial court found that the officer had adequate "reason to believe," stating in part:

"* * * I think that Officer Cuthbertson, based on the experience that he's had as a truck driver and with the knowledge that he's had of * * * [the type of load involved], * * * I think that there are sufficient facts for Cuthbertson, a former truck driver and former hauler of steel to come to the conclusion [as to overweight], * * * [and that] he had sufficient articulable suspicions that would form reason to believe under the test."

A review of the transcript reveals that earlier in the hearing, the trial court remarked:

"I am going to allow [the defendants to raise] the additional * * * [constitu-

tional issue]. Reason to believe and probable cause are presumably close but not the same. I suppose the resolution of that issue might also be something that would be worthwhile at some higher level and perhaps the Court of Appeals can tell me what they didn't state in * * * [*State* v. *Reiger* (1978), 63 Ohio App. 2d 135 (17 O.O.3d 332)] which is, if reason [to believe] doesn't equate itself to probable cause, what does it equate itself to?''

In the *Reiger* case, we held that the ''reason to believe'' language of R.C. 4513.33 ''is not to be interpreted to mandate a showing of probable cause, as is required to obtain a search warrant.'' *State* v. *Reiger, supra,* at 139. Nor would ''reason to believe'' justify any *seizure* of a person that amounts, in effect, to an arrest, since it is well-established that a full-blown arrest cannot be justified on anything *less* than probable cause. See *Dunaway* v. *New York* (1979), 442 U.S. 200, 208-212. The trial court was correct in concluding that the statutory requirement of ''reason to believe'' and the constitutional concept of probable cause are not the same.

However, R.C. 4513.33 would not survive constitutional scrutiny if ''reason to believe'' permitted stops to be made on anything less than what the Fourth Amendment to the federal Constitution sets out as a ''minimum standard.''[2] ''Reason to believe'' is, therefore, tantamount to ''reasonable suspicion,'' as that concept has evolved and come to be understood since its inception in *Terry* v. *Ohio* (1968), 392 U.S. 1 [44 O.O.2d 383]; see, also, *Florida* v. *Royer* (1983), 75 L.Ed. 2d 229.

The ''reason to believe'' requirement of R.C. 4513.33 certainly does not sanction *random* police stops to ferret out violations of the load-weight limitations of R.C. 5577.04. Yet in the *Reiger* case, the defendant's truck was *not* stopped, initially, for the purpose of weighing it. Rather, the defendant's truck was stopped pursuant to R.C. 4513.02(B), which authorizes highway patrol officers to stop vehicles for obvious *safety* defects or at random, and we so held in that case. See *State* v. *Reiger, supra,* paragraph one of the syllabus.[3]

In the present case, Officer Cuthbert-

---

[2] Indeed, ''reason to believe'' could not be anything less than ''reasonable suspicion'' in the context of a so-called ''investigative detention,'' of which the case *sub judice* is a prime example. Thus, at least the initial stop of the vehicle must be supported by ''reason to believe'' which differs in no meaningful respect from the concept of ''reasonable suspicion'' developed in the *Terry*-line of cases. See *Terry* v. *Ohio* (1968), 392 U.S. 1 [44 O.O.2d 383]. As a practical matter, a lack of any ''reason to believe'' must *necessarily* be deficient ''reasonable suspicion,'' since a state statute could not authorize police stops on less than what the Fourth Amendment requires. Therefore, the exclusionary rule is properly invoked *on constitutional grounds* (''reasonable suspicion''), not state statutory grounds (''reason to believe'').

[3] In *Delaware* v. *Prouse* (1979), 440 U.S. 648, which was decided after *State* v. *Reiger* (1978), 63 Ohio App. 2d 135 [17 O.O.3d 332], the United States Supreme Court held that *random* stops of moving vehicles by police for the ostensible purpose of a license check, without any concomitant basis for reasonably suspecting that a crime has occurred, contravenes the Fourth Amendment to the United States Constitution. The court reasoned that, first, the vehicle's occupants do not lose all reasonable expectations of privacy simply because the vehicle itself is subject to governmental registration and licensing requirements; secondly, police methods less intrusive than *random* stops could accomplish the same purpose of, and secure the government's legitimate interest in, highway safety. *Delaware* v. *Prouse, supra,* at 658-663.

In light of *Delaware* v. *Prouse,* the continuing vitality of certain portions of *State* v. *Reiger,* including the first paragraph of the syllabus therein, may be limited. However, we discuss this issue only as a passing observation, since it was neither raised nor argued by the parties to this appeal and is, in any event, unnecessary to the disposition of this case.

son articulated the specific, objective facts which led him reasonably to suspect that appellees' tractor-trailer rigs were overweight. See *Terry* v. *Ohio, supra,* at 21; *Florida* v. *Royer, supra,* at 236-237. His past experience as a truck driver and his thirteen years' experience as a police officer lent support to the conclusions he drew from personal observation. *Terry* v. *Ohio, supra.* Consequently, the trial court correctly found that Cuthbertson's stop of appellees' trucks was lawful.

### B

The thrust of the trial court's decision to grant appellees' motions to suppress centered on their argument that police had detained them for an unreasonably long time to accomplish the weighing. The trial court agreed, stating in part:

"* * * [R.C. 4513.33] states that, in its first paragraph, 'any vehicle stopped in accordance with this section may be held by the police officer for a reasonable time only to accomplish the weighing as prescribed by this section.'

"In considering the cases and in reading the statute, it would appear to me that the statute requiring the weighing within a reasonable period of time and allowing a detention of a vehicle for that reasonable period of time * * * is an indication statutorily of what is the, or what is known as, the investigative detention, or an investigative stop. In short, *it is nothing more than a statute that has, for purposes of [the] Fourth Amendment, * * * [an] indication that investigative stops are allowed* and detention for a reasonable period of time is granted where overweight situations may be occurring.

"In short, I * * * think what I'm really saying here then is that * * * [R.C. 4513.33], although a statute, is merely putting a, or justifying a reason to stop for something less than probable cause * * *. *So seeing that this [statute] is merely a codification of what would be a right to an investigative stop with something less than probable cause,* it would appear

that it also is subject to the Fourth Amendment and * * * it must be limited in duration in order to be reasonable * * *. [I]f a suspect is held too long without the requisite probable cause for an arrest developing, a court can hold that the detention [has] ripened into a [*sic*] illegal arrest.

"It's not only a violation with an investigative type stop, *which has been legitimized by the statute,* but it also is a matter in which [the remedy of the exclusionary rule] * * * must be allowed * * *.

"* * * [T]he matter is suppressible as being a detention subject to the Fourth Amendment without probable cause, and accordingly this would allow exclusion to be an appropriate remedy in this particular case." (Emphasis added.)

The trial court, it seems, premised its ruling on the belief that a violation of the "reasonable time" provision of R.C. 4513.33 is *necessarily* a violation of the *constitutional* stricture against unreasonable searches and seizures. The court does not appear to have found two separate and distinct infringements, one statutory and the other constitutional, but rather one violation having interrelated ramifications; indeed, in its view, R.C. 4513.33 actually embodies the constitutional protections associated with investigative detentions.

In rendering its oral opinion, the trial court relied on our decision in *State* v. *Stewart* (March 5, 1982), Wood App. No. WD-81-58, unreported, and *State* v. *Angel* (Dec. 5, 1980), Wood App. No. WD-80-39, unreported. In *State* v. *Angel,* the defendant's truck was detained in excess of two hours. We held, in effect, that the delay in weighing the vehicle was, as a matter of law, unreasonable. In addition, we were persuaded that certain language in *State* v. *Shepherd* (1980), 61 Ohio St. 2d 328, 330 [15 O.O.3d 396], "inferentially" provided some support for the view that suppression was an appropriate remedy for violations of R.C. 4513.33. However, we also resolved the sole assignment of error

therein raised on other grounds. Subsequently, in *State* v. *Stewart*, we faced a similar fact pattern in which the defendant's truck was detained for approximately two hours and sixteen minutes prior to the arrival of Trooper Click and the portable scales. The *actual weighing* of the defendant's truck was not completed until over six hours after the initial stop. Adhering to the two-hour limitation previously established in *State* v. *Angel*, we held that the detention was unreasonable and affirmed the trial court's suppression of evidence of the truck's weight.

## IV

## A

Where we part company with the trial court's analysis of R.C. 4513.33 is in its conclusion that the phrase "a reasonable time only" incorporates by reference the principles and exclusionary remedy of federal search and seizure law. Moreover, recent pronouncements by the Ohio Supreme Court on the proper scope of the exclusionary rule now compel reconsideration of our earlier decisions in *State* v. *Angel* and *State* v. *Stewart, supra.*

The trial court's apparent incorporation theory, though novel, is one for which there is simply no support. Neither in the statute itself nor in any decision of the Ohio Supreme Court is there any indication whatsoever that the General Assembly intended the language "a reasonable time only" to incorporate Fourth Amendment principles or even to intimate that Fourth Amendment analysis is appropriate in cases such as this one. Stated differently, the language "a reasonable time only" is not to be interpreted to constitutionalize that portion of R.C. 4513.33, such that it becomes a vehicle for invoking the exclusionary rule to remedy violations thereof. *State* v. *Shepherd, supra,* suggests nothing to the contrary.

In point of fact, a growing body of case law has explicitly proscribed use of the exclusionary rule to suppress evidence obtained in contravention of state statutory law when no concomitant violation of constitutional law is shown. In *Kettering* v. *Hollen, supra,* the Ohio Supreme Court held,[4] in the syllabus, as follows:

"The exclusionary rule will not be applied to the testimony of an arresting police officer regarding the actions of a misdemeanant observed as a result of an extraterritorial warrantless arrest, even though the arrest is unauthorized under existing state law * * *."

In *State* v. *Unger* (1981), 67 Ohio St. 2d 65 [21 O.O.3d 41], the Supreme Court stated:

"We summarily reject appellant's argument that his confession should be suppressed because he was transported from Darke County to Miami County in contravention of R.C. 2935.14. * * * Assuming, without deciding, that R.C. 2935.14 supersedes Crim. R. 4(E)(2) and was violated, *this, by itself would not be*

---

[4] In *Kettering* v. *Hollen* (1980), 64 Ohio St. 2d 232 [18 O.O.3d 435], the Supreme Court, in the body of the opinion, went on to state the following:

"The exclusionary rule has been applied by this court to violations of *a constitutional nature only.* In *State* v. *Myers* (1971), 26 Ohio St. 2d 190, 196 [55 O.O.2d 447], this court enunciated the policy that the exclusionary rule would not be applied to statutory violations falling short of constitutional violations, *absent a legislative mandate* requiring the application ·of the exclusionary rule. * * * [The court cites *State* v. *Davis* (1978), 56 Ohio St. 2d 51 (10 O.O.3d 87), and *State* v. *Downs* (1977), 51 Ohio St. 2d 47, 63-64 (5 O.O.3d 30). ]

"It is clear from these cases that the exclusionary rule will not ordinarily be applied to evidence which is the product of police conduct *violative of state law but not violative of constitutional rights.*" (Emphasis added.) *Id.* at 234-235.

See, also, *State* v. *Allen* (1981), 2 Ohio App. 3d 441, 442; cf. *State* v. *Bernath* (1981), 3 Ohio App. 3d 229, 230.

*sufficient to invoke the exclusionary rule."* *Id.* at 69-70. (Emphasis added.)

Five months after the *Unger* decision, the Supreme Court rendered its opinion in *State* v. *Geraldo* (1981), 68 Ohio St. 2d 120 [22 O.O.3d 366]. In a rather enlightening passage, the court stated:

"* * * Even if we assume, however, that the actions of * * * [the law enforcement officers] fell afoul of those authorized under R.C. 4931.28 [telephone wiretapping prohibited], the question remains whether this statutory violation provides a sufficient basis to invoke the exclusionary rule to suppress the controverted recordings.

"* * * It is * * * clear that the General Assembly chose not to enact a statutory exclusionary rule that would come into play when evidence is obtained in violation of R.C.4931.28. Several states have enacted statutes governing the use of electronic surveillance that incorporate explicit provisions limiting or prohibiting the use of evidence obtained in contravention of the electronic surveillance laws. * * * As the Court of Appeals stated, however, 'Ohio has no such explicit state statutes which govern electronic surveillance.'

"Moreover, nothwithstanding the fact that a violation of R.C. 4931.28 may give rise to criminal penalties or as one Court of Appeals has ruled, a private action in tort, see *LeCrone* v. *Ohio Bell Tel. Co.* (1961), 114 Ohio App. 299 [19 OO.2d 236], * * * *the rule in this state is that * * * 'the exclusionary rule will not ordinarily be applied to evidence which is the product of police conduct violative of state law but not violative of constitutional rights.'* * * * [*Kettering* v. *Hollen* and *State* v. *Unger, supra.*] We see no reason to depart from the aforestated rule, and,

accordingly, we refuse to constitutionalize R.C. 4931.28. *Nor, under the guise of construing the statute, do we choose to write into R.C. 4931.28 a provision excluding probative evidence obtained in violation thereof."* *Id.* at 128-129. (Emphasis added.)

The Ohio Supreme Court's disinclination to write into R.C. 4931.28 an exclusionary provision applies with equal force to the "reasonable time" language of R.C. 4513.33. In the absence of a clear legislative mandate or an express holding of the Supreme Court to the contrary, R.C. 4513.33 is not to be construed to embody an exclusionary remedy. Based upon the clear import of the foregoing cases, we hold that unless there is a separate and distinct constitutional basis upon which to suppress otherwise relevant, admissible evidence, the exclusionary rule will not be invoked as the remedy for a police violation of state statutory law only. Consequently, language in *State* v. *Stewart* and *State* v. *Angel* inconsistent with this holding is now explicitly disaffirmed. The more appropriate remedy for a violation of R.C. 4513.33 is to hold the particular law enforcement agency liable for provable damages proximately caused by an unreasonably long detention. Cf. *LeCrone* v. *Ohio Bell Tel. Co.* (1961), 114 Ohio App. 299 [19 O.O.2d 236], approved in *LeCrone* v. *Ohio Bell Tel. Co.* (1963), 120 Ohio App. 129 [28 O.O.2d 374.][5]

B

Having re-examined and reconsidered the *Angel* and *Stewart* cases, we further conclude that the so-called "two-hour rule" derived therefrom was improvidently based upon a misinterpretation of R.C. 4513.33. The pertinent language of the statute must be read carefully and in con-

---

[5] We observe that *LeCrone* v. *Ohio Bell Tel. Co.* (1961), 114 Ohio App. 299 [19 O.O.2d 236], was cited, with apparent approval, by the Ohio Supreme Court for the proposition that a violation of R.C. 4931.28 may give rise to a private action in tort. Analogously, a private damages action would lie as an alternative remedy for police violations of R.C. 4513.33, since use of the exclusionary rule is now foreclosed.

text: A vehicle may be detained "for a reasonable time only *to accomplish the weighing* * * *." (Emphasis added.) The reasonableness of *the length* of the detention is circumscribed or delimited by its purpose, which is, of course, *to weigh the vehicle.* Thus, the obvious time period contemplated by the statute for determining what is a "reasonable time" commences with the initial stop of the vehicle and ceases *when the actual weighing process is completed.* The *Angel* and *Stewart* cases incorrectly implied that the relevant time period runs from the initial stop of the vehicle to the point at which the weighing *begins.*

Based upon this construction of the statutory language, we hold that a detention of a vehicle for the purpose of weighing it which exceeds five hours is *per se* unreasonable. Stated differently, for a detention to be reasonable under R.C. 4513.33, the weighing must be completed, including the issuance of a citation, if any, within five hours of the initial stop. Failure to do so may render the law enforcement agency involved liable should provable damages be proximately caused by any delay beyond that five-hour period.[6]

Accordingly, the trial court erred in suppressing the state's evidence of the weighing and weight of appellees' vehicles. Appellant's second assignment of error, as heretofore construed, is well-taken.

On consideration whereof, the judgment of the Perrysburg Municipal Court is hereby reversed. This case is remanded to said court for further proceedings according to law. Costs assessed against appellees Clifford Wells and Randy Volschow.

*Judgment reversed*
*and cause remanded.*

CONNORS, P.J., and RESNICK, J., concur.

---

[6] Although we are reluctant to set down a judicially fashioned, and perhaps somewhat arbitrary, five-hour rule beyond which all detentions are, as a matter of law, unreasonable, we prefer *some* rule to a vague "totality of the circumstances" approach. In practice, reasonableness "under the circumstances" too often becomes a judicial euphemism for arbitrariness on a case-by-case basis. Hence, for the purpose of expediting any civil damages actions which might arise in future cases of this type, uniformity dictates that lower courts have a clear and fixed rule for determining when R.C. 4513.33 has been violated by police officers.

Additionally, we emphasize that in disapproving use of the exclusionary rule for violations of R.C. 4513.33, and in modifying the two-hour rule, we are in no way intimating that police or highway patrol officers now have *carte blanche* authority to detain or delay indefinitely a vehicle (and its driver) even though it is otherwise lawfully stopped. *Weighing procedures should be accomplished with all possible alacrity,* since a delay, if in excess of five hours, may render the particular law enforcement agency involved liable for provable damages proximately caused thereby.