[Cite as *State v. Gillen*, 2025-Ohio-1095.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

| | |
|---|---|
| State of Ohio | Court of Appeals No.   E-24-001 |
| | E-24-002 |
| Appellee | E-24-003 |
| | E-24-004 |
| | E-24-005 |
| | |
| v. | Trial Court No.  23TRD046 |
| | 23TRD073 |
| Shaun K. Gillen, et al. | 23TRD074 |
| | 23TRD268 |
| Appellants | 23TRD423 |

**DECISION AND JUDGMENT**

Decided:  March 28, 2025

* * * * *

Andrea F. Rocco, City of Huron Prosecutor,
and Jefffrey S. Moeller, for appellee.

Erik G. Chappell and Lacey L. Riley, for appellant.

* * * * *

**ZMUDA, J.**

## I.  Introduction

{¶ 1} In this consolidated appeal, appellants Shaun Gillen, Walter Huffman, Jr.,

Richard Celestino, and Jeffrey Ridner ("appellants"), appeal from the trial court's

October 6, 2023 denial of their motions to suppress and their subsequent December 5,

2023 convictions for violations of R.C. 5577.04(E). For the following reasons, we affirm the trial court's denial of appellants' motions and affirm their convictions.

## A. Facts and Procedural Background

{¶ 2} This consolidated appeal arises from five separate incidents in which appellants, each of whom was operating a commercial vehicle on State Route 2 in Huron Township, Erie County, Ohio, received a citation for their violation of R.C. 5577.04(E)—exceeding the maximum gross vehicle weight allowed by statute. Erie County Sheriff's Department Deputy Nicholas Mazur issued each of the citations. Gillen received his citation on January 17, 2023. Celestino received his citation on January 24, 2023. Ridner received his citation on April 4, 2023. Huffman received separate citations on January 24, 2023 and March 6, 2023. Each appellant entered a not guilty plea to their citation and ultimately proceeded to trial. In advance of their trials, all appellants filed motions to suppress any evidence obtained during their traffic stops, alleging Mazur did not have a sufficient basis to initiate the stops. Specifically, each appellant argued that Mazur chose to pull them over simply to check their weight without any reasonable suspicion that their vehicles were over the maximum weight.

{¶ 3} The trial court consolidated appellants' cases for a joint hearing on each appellant's motion to suppress. The hearing took place on August 1, 2023. Mazur and appellant Ridner testified at the hearing. Mazur's testimony discussed general observations that he believed provided him with reasonable, articulable suspicion that a vehicle is overweight before turning to the observations he made of each appellants'

2.

vehicle which led to their respective traffic stops. We divide our summary of his testimony the same way:

**Testimony of Deputy Mazur**

*General observations regarding reasonable suspicion a vehicle is overweight*

{¶ 4} At the time of the hearing, Mazur had been employed as a deputy with the Erie County Sheriff's Department for approximately 15 years. Over the previous 8 years, he had been assigned to commercial motor vehicle weight enforcement. To prepare for that assignment, he completed a 40-hour course in 2015. He described the course as having provided instruction on weights, measure, overloads, over-widths, length, and heights of commercial vehicles. He also noted that the course provided him with identifying the observations that would indicate a vehicle is overweight prior to initiating a traffic stop. He stated that his suspicion a vehicle is overweight can be derived from several observations. These include "significant tire bulging[, the] number of axles that are being utilized also showing tire bulge[, and] suspension travel [which is] different between * * * an empty trailer, a legally loaded trailer, and what would be an overloaded trailer."

{¶ 5} Mazur subsequently provided further detail as to what factors indicate a vehicle is overweight. He stated that tire bulge suggests that the axle is carrying weight. As to the vehicle's suspension, he testified:

> [T]he suspension of just say an empty trailer will be very fast. It will stabilize the trailer almost immediately once it hits a bump and then it just travels down the road very smoothly. Hits the bump. The suspension works properly and then the trailer stabilized. The heavier the load that's on the trailer will slow down that stabilization, that it will hit a bump or,

3.

you know, an abutment or something in the roadway to where the suspension is slower to react and there will be a slow bouncing up and down I guess you would call it for lack of better terms but the trailer would be, you know, moving up and down pretty slowly until it—the suspension, you know, catches up and stabilizes the load to run it smooth again.

He also testified that when a vehicle is overweight the engine will make a louder noise and that the "takeoff" is slower and can lead to "significant exhaust."

{¶ 6} On cross-examination, Mazur recognized that he "can't pull someone over just to check their weight" but that he must have a reason to suspect that the vehicle is overweight. He testified that tire bulge is an indicator of an overweight vehicle but conceded that tire bulge alone is not enough to initiate a traffic stop, stating:

I can't determine anything from tire bulge. I can't determine the weight of a vehicle by tire bulge. And you're always going to want an additional observation just to kind of corroborate your observations and what you're seeing.

He also testified that his training did not offer any specific information regarding a tire's construction or its impact on the amount of tire bulge that might suggest the vehicle is overweight.

{¶ 7} Regarding his observations of a vehicle's suspension as to his determination that a vehicle may be overweight, Mazur conceded that he could not observe whether a vehicle's suspension was "air or spring." However, he stated "[t]hey're both going to be slow. I can't tell you exactly how a spring suspension is going to react next to an air suspension * * * [b]ut they're both going to be slower in their movements[.]" In describing a "sluggish" suspension that indicates a vehicle is overweight, he stated "[a] heavier load will be a slower reaction."

4.

{¶ 8} Appellants' counsel also questioned Mazur regarding the language used in the reports following his issuance of citations to a driver in an overweight vehicle. Mazur agreed that the language used in his reports was similar in each of the underlying cases. However, he denied that he used the language in those reports, regardless of his actual observations, because he believed it would confirm his claimed reasonable suspicion that a vehicle was overweight. Instead, he testified that the language used in his reports are based on the observations that warranted the traffic stop and that "[i]f the circumstances and observations are the same, then yes, [the language in the report] will be the same."

{¶ 9} After providing testimony related to the general procedures and observations that would give him reasonable suspicion that a vehicle is overweight, Mazur proceeded to describe the events surrounding the issuance of each citation underlying this consolidated appeal.

### *Gillen*

{¶ 10} On January 17, 2023, Mazur was patrolling State Route 2 in Erie County, Ohio. From his stationary position, he observed Gillen driving a six-axle truck-trailer combination. Once Gillen drove past him, Mazur began following him. He followed Gillen for "a couple miles" and observed "some tire bulge in the vehicle tires." He specified that although he could not see every tire, that all of the tires he could observe were bulging. Although he did not remember doing so in this case, Deputy Mazur stated that he would typically move around a vehicle he was observing to determine whether only a single tire was bulging—which could be attributed to an "air issue"—or whether

all tires were bulging.  He also observed Gillen's vehicle exhibiting "slowing, sluggish suspension * * * leading [him] to believe that it was loaded heavily."

{¶ 11} Based on these observations, Mazur suspected that "the vehicle was in excess of 80 thousand pounds or the legal load limit."  He initiated a traffic stop and Gillen provided him with his driver's license and bill of lading.  After having his recollection refreshed through his written report, Mazur noted that the bill of lading showed the vehicle's weight as 119,000 pounds.  Mazur then requested a permit from the Ohio Department of Transportation ("ODOT") that allowed Gillen to travel with a vehicle in excess of the 80,000 pound limit.  Gillen did not produce a permit and Mazur was not able to find an applicable permit in the ODOT database.  Mazur then proceeded to weigh Gillen's vehicle using portable scales.  The vehicle weighed 118,000 pounds.  Mazur then issued Gillen a citation for exceeding the maximum gross vehicle weight pursuant to R.C. 5577.04(E).

### *Celestino*

{¶ 12} On January 24, 2023, Mazur was patrolling State Route 2 in Erie County, Ohio.  On that date, he observed Celestino traveling on the roadway in a seven-axle truck-trailer combination.  Mazur initially observed "compression of the tires" and began traveling behind Celestino's vehicle to continue his observations.  While behind the vehicle, Mazur observed the tire bulge as well as "sluggish suspension movement."  He testified that when a trailer is "loaded heavily," it will be "very slow in its movements; slowly up and down * * * as the suspension tries to work and stabilize the load."  On cross-examination, Mazur could not identify which specific tires were bulging, stating

6.

that "all of them were under some amount of weight, * * * [to] varying degrees[.]" Mazur initiated a traffic stop based on his observations, suspecting that Celestino's vehicle was overweight.

{¶ 13} Upon approaching Celestino in the cab of the vehicle, Celestino provided Mazur with his driver's license and a bill of lading. The bill of lading showed that Celestino's vehicle weighed in excess of 80,000 pounds, although Mazur could not recall the specific weight. Mazur then asked Celestino to provide a permit that allowed him to travel in excess of the 80,000 pound weight limit. Celestino did not have a permit. Mazur could not find a permit in the ODOT database. He proceeded to weigh Celestino's vehicle and determined that it weighed in excess of the 80,000 pound limit. Mazur then issued Celestino a citation for exceeding the maximum gross vehicle weight pursuant to R.C. 5577.04(E).

*Huffman*

{¶ 14} Mr. Huffman was issued two citations that are the subject of this appeal. The first citation was issued on January 24, 2023. While patrolling State Route 2 in Erie County, Ohio, Mazur observed Huffman traveling in a six-axle truck-trailer combination. As Huffman traveled, Mazur observed a "flapping, thudding" sound that he described as "not typical." Mazur testified that this noise indicated that there was "an issue with the tire[,] whether it be a flat spot or in this case a tire off the rim." Mazur then moved in behind Huffman's vehicle and observed "slow and sluggish suspension" and "load-induced tire bulge." He also noted that one of the tires was "wobbling." He described the tire as "completely deflated" and off the rim. He did not follow Huffman's vehicle

7.

"very long because the tire was wobbling and it was not safe to drive." Mazur then initiated a traffic stop.

{¶ 15} Mazur approached Huffman and informed him of the flat tire and his suspicion that Huffman's vehicle was overweight. Mazur requested Huffman's driver's license and bill of lading. The bill of lading indicated that Huffman's vehicle weighed in excess of 80,000 pounds. Mazur then asked Huffman for a permit allowing him to travel in a vehicle in excess of 80,000 pounds. Huffman produced a "single trip permit." Mazur explained that this type of permit allowed for a single trip in excess of the maximum weight. After discussing the permit with Huffman, Mazur determined that Huffman had already exhausted the single trip permit by completing a trip under that permit the previous day. As a result, Mazur continued, Huffman did not have a valid permit for his current load. Mazur then proceeded to weigh Huffman's vehicle. Although the specific results of that weighing were not addressed during Mazur's testimony, Mazur ultimately issued Huffman a citation for exceeding the maximum gross vehicle weight pursuant to R.C. 5577.04(E).

{¶ 16} Huffman received his second citation on March 6, 2023. On that date, Huffman was traveling on Route 2 in Erie County, Ohio. Mazur observed Huffman driving a six-axle truck-trailer combination. Mazur stated that Huffman's vehicle exhibit "load-induced tire bulge" on all tires and "slow and sluggish suspension." On cross-examination, Mazur conceded that he could not specifically recall seeing the tire bulge on each tire but maintained that the bulge was present. Mazur initiated a traffic stop based on his observations.

8.

{¶ 17} Mazur recognized Huffman from his previous stop. Huffman provided Mazur with his driver's license and bill of lading. The bill of lading indicated that Huffman's vehicle was in excess of 80,000 pounds. Huffman then provided Mazur with a permit purportedly allowing the excess weight. Upon reviewing the permit, Mazur discovered that while the permit would allow for the excess weight, it was not assigned to Huffman's present vehicle. He elaborated that permits are assigned to specific trucks, establishing specific routes they must follow, and a specific time window in which the requested travel must be completed. The permits are issued for the truck and not the trailer since trailers can be switched out as needed. He discovered that the permit Huffman presented had actually been issued for a truck Huffman drove in January 2023. The permit was not issued to the truck Huffman was currently driving or the truck he was driving when he was previously issued a citation. Mazur advised Huffman of the permit issue. Huffman stated that he believed the permit the truck was issued to had broken down, resulting in him needing to drive the current truck.

{¶ 18} Mazur proceeded to weigh Huffman's vehicle. He determined that it weighed in excess of 80,000 pounds and issued Huffman a citation for exceeding the maximum gross vehicle weight pursuant to R.C. 5577.04(E).

<em>Ridner</em>

{¶ 19} Mazur issued a citation to appellant Jeffrey Ridner on April 4, 2023, while Mazur was patrolling State Route 2 in Erie County, Ohio. Mazur observed Ridner driving a seven-axle truck-trailer combination that Mazur believed "appeared to be heavily loaded." Mazur then pulled in behind Ridner's vehicle and observed "load-

9.

induced tire bulge" and that Ridner's "[s]uspension was slow." On cross-examination, however, Mazur could not recall which specific tires were bulging. Mazur then testified that he initiated a traffic stop and asked Ridner for his driver's license and bill of lading.

{¶ 20} The bill of lading showed Ridner's vehicle weight exceeding 80,000 pounds. Mazur then requested a permit allowing for the excess weight but could not recall if one was provided. Instead, Mazur testified that he reviewed the ODOT database to determine whether Ridner had a valid permit issued to his truck for that day's travel. Mazur did find a permit issued to Ridner's truck but noted that it was for hauling a load in the opposite direction Ridner was traveling. As a result, Mazur concluded that the permit was invalid for the route Ridner was traveling.

{¶ 21} Mazur next informed Ridner that he was going to weigh the truck. Video from Mazur's body camera recorded the entirety of Ridner's traffic stop. The video was played during Mazur's testimony. It showed Ridner speaking with Mazur as he prepared the scales. Mazur informed Ridner of the basis for the stop, stating:

> When you went by I saw you were seven-axle, had them all on the ground, I got out behind you, could see a little tire bulge. You know, any time you are up about 80, 90, 100,000, that trailer, she'll just kind of do a worm instead of a normal bounce with a normally loaded suspension. Any time you see that kind of slow, up and down on the back end you know it's got a pretty good load on there. And I was behind you I could see the tires on the back there, they just bulge on the back there. * * * a legal load is not going to show anything.

10.

{¶ 22} During the stop, Ridner took photographs of the tires on his vehicle.[1] Mazur reviewed the photographs during his testimony and confirmed that they indicated tire bulge, stating:

> It's a very difficult angle to see but, yes, if you look towards the front of the truck the drive axles you can see tire bulge on them. More pronounced I guess than the ones that are at a worse angle. * * * The deflection at the bottom of the tire that instead of it being straight it has a little bulge and it's actually the trailer tire bulge is visible in the second picture as well.

He further clarified that the angles of the pictures made the tire bulge more difficult to see but that his view from behind the vehicle while traveling showed the tire bulge more clearly. Mazur then testified that he proceeded with weighing Ridner's vehicle and determined that it weighed in excess of 80,000 pounds. Mazur then issued Ridner a citation for exceeding the maximum gross vehicle weight pursuant to R.C. 5577.04(E).

### Post-hearing briefs and the trial court's decision

{¶ 23} The hearing concluded at the end of Mazur's testimony. The trial court granted appellants' request for post-hearing briefs. Those briefs were filed on September 22, 2023. In their joint response, appellants argued, generally, that Mazur did not have a reasonable, articulable suspicion that their vehicles were overweight and, therefore, did not have a valid basis to initiate their traffic stops. They argued, instead, that Mazur was targeting the company they worked for by stopping their vehicles without any basis. Conversely, the State argued that Mazur's separate observations of each appellant's

---

[1] Ridner briefly testified to authenticate the photographs. We omit a summary of his testimony as it did not impact the substantive suppression arguments made before the trial court or in this appeal.

vehicles, including bulging tires, sluggish suspension, and in one instance a flat tire, provided him with the reasonable, articulable suspicion necessary to initiate the traffic stops.

{¶ 24} The trial court denied appellants' respective motions on October 6, 2023. The trial court determined that in each instance, Mazur had reasonable, articulable suspicion that appellants had violated R.C. 5577.04(E) and, therefore, had a sufficient basis to initiate their traffic stops.

<b><u>Trial, Verdict, and Appeal</u></b>

{¶ 25} The consolidated matters proceeded to a joint bench trial on December 5, 2023. At trial, Mazur testified about the procedure through which he conducted the weighing of each appellant's vehicle. Relevant to the present appeal, Mazur testified that the scales he used to conduct the weighing had been certified as accurate. He testified that he "personally took them down to the Department of Agriculture and had them certified." The scales he uses were certified on March 16, 2022. Mazur stated that these certifications are valid for "one year." Upon certification, the Department of Agriculture placed a "seal" on the scales. Mazur testified that the seal was present on the scales at the time he weighed each appellant's vehicle.

{¶ 26} Mazur relied on State's Exhibits 4 and 5 as the basis for his assertion that the scales were certified. These exhibits included affidavits from Tom Buck, a Weights and Measures Supervisor in the Ohio Department of Agriculture, stating that the scales Mazur utilized had been certified on March 11, 2022 and February 28, 2023. The affidavits stated that the testing underlying the certification was performed by Ken

12.

Johnson, an employee at the Department of Weights and Measures. Appellants objected to the introduction of the affidavits at trial as evidence that the scales were certified, arguing that since Mr. Buck did not perform the calibration of the scales, that he lacked the requisite personal knowledge necessary to describe the testing Johnson performed. Therefore, appellants continued, the affidavit could not be used to show that the scales had valid seals at the time they were used to weigh their vehicles as required by R.C. 4513.33 in order to secure a conviction under R.C. 5577.04(E). The state, in response, argued that the presence of the seals on the scales, accompanied with Mazur's description of those seals, was all the evidence required to show that the scales were properly certified. As a result, the state argued, any concerns with the affidavit had no impact on the admissibility of evidence related to the certification of the scales. The trial court overruled appellants' objection.

{¶ 27} Mazur continued his testimony by identifying the results of the weighing of each appellants' vehicle and his conclusion that they were traveling in excess of the maximum weight without a valid permit. The state rested at the conclusion of Mazur's testimony. Appellants did not present any evidence at trial. The trial court found each appellant guilty of traveling in a vehicle that exceeded the maximum weight in violation of R.C. 5577.04(E). The trial court filed a separate judgment entry, in each appellant's case, reflecting the guilty verdict and the fines imposed at the conclusion of the trial.

13.

## B. Assignments of Error

{¶ 28} Appellants timely appealed their convictions on January 4, 2024. We consolidated their appeals on January 26, 2024. Appellants filed a joint brief in each consolidated case on May 23, 2024, asserting the following errors for our review:

1. The trial court erred in denying appellants' motion to suppress.

2. The trial court erred in finding appellants guilty following trial as appellants' convictions were not supported by sufficient evidence.

## II. Law and Analysis

*a. The trial court did not err in denying appellants' motion to suppress.*

{¶ 29} In their first assignment of error, appellants argue that the trial court erred in denying their motion to suppress. They argue that Mazur lacked a reasonable, articulable suspicion that their vehicles were overweight prior to initiating a traffic stop. As a result, they argue that Mazur's weighing of their vehicles was not admissible at trial.

{¶ 30} Appellants' motion to suppress was based on alleged violations of their rights under the United States and Ohio Constitutions. "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee the right to be free from unreasonable searches and seizures." *State v. Mays,* 2008-Ohio-4539, ¶ 7. "The United States Supreme Court has stated that a traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime." *Id.* "[I]f an officer's decision to stop a motorist for a criminal violation, including a traffic violation,

14.

is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid." *Id.* at ¶ 8.

{¶ 31} In the context of overweight vehicles, R.C. 4513.33 states, in relevant part:

> Any police officer having reason to believe that the weight of a vehicle and its load is unlawful may require the driver of said vehicle to stop and submit to a weighing[.]

"The term 'reason to believe' as used in the statute * * * has been held to be equivalent to the 'reasonable suspicion' standard necessary to justify an investigatory stop as articulated in *Terry v. Ohio,* 392 U.S. 1 (1986)." *Toledo v. Harris,* 99 Ohio App.3d 469 (6th Dist. 1994), citing *State v. Wells,* 11 Ohio App.3d 217 (6th Dist. 1983). That is, "[t]o justify an investigatory stop of a motor vehicle, a police officer must possess, at the least, an 'articulable and reasonable suspicion that * * * a vehicle is subject to seizure for a violation of the law[.]'" *Id.* Whether the traffic stop was valid "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. *Maumee v. Kelley,* 1993 WL 313596, *2 (6th Dist. Aug. 20, 1993).

{¶ 32} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Bui*, 2021-Ohio-362, ¶ 29 (6th Dist.), citing *State v. Burnside,* 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Burnside* at ¶ 8, citing *State v. Mills,* 62 Ohio St.3d 357, 366 (1992). "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent credible evidence". *Id.* at ¶ 8. "Accepting these facts as true, the appellate court must then independently determine, without

15.

deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

{¶ 33} In their joint brief, each appellant challenges both the trial court's findings of fact, alleging that they are not supported by competent, credible evidence, and that those facts do not support the reasonable, articulable suspicion standard necessary to find that the traffic stops were valid. We address these arguments in turn.

> i. *The trial court's findings of fact were supported by competent, credible evidence.*

{¶ 34} Appellants note that the trial court made two findings of fact in each case—that Mazur observed bulging tires on each vehicle prior to initiating a traffic stop and that Mazur observed each vehicle exhibiting slow, sluggish suspension.[2] They each argue that these findings are not supported by competent, credible evidence. We disagree.

{¶ 35} The primary source of evidence in the underlying cases is Mazur's testimony. "Competent evidence includes testimony from one who has personal knowledge of the matter for which the testimony is elicited." *Damron v. CSX Transp., Inc.,* 2009-Ohio-3638, ¶ 57 (2d Dist.). During his testimony at the consolidated hearing on appellants' motion to suppress, Mazur offered testimony supporting each of these factual findings. As to Gillen, Mazur stated that he observed "some tire bulge in the vehicle tires" and "slowing sluggish suspension." When observing Celestino's vehicle, Mazur testified that he could see the tires bulging and slow, sluggish suspension while

---

[2] In Huffman's case, the trial court also found that Mazur observed a flat tire on his vehicle when he was issued his first citation. Huffman does not challenge that conclusion.

16.

the vehicle traveled. Mazur also testified that he could observe bulging tires and slow, sluggish suspension when observing Huffman traveling on both occasions that Mazur issued him a citation and a flat tire on the first occasion. Finally, Mazur testified that he observed Ridner's vehicle exhibiting tire bulge and slow, sluggish suspension. Put simply, as to each appellant, Mazur testified that he observed their tires bulging and that their vehicle exhibited slow, sluggish suspension. Each of these observations were reflected in Mazur's corresponding report. We find that Mazur's testimony regarding his personal observations of each appellant's respective vehicle constitutes competent, credible evidence that the vehicles exhibited tire bulge and slow, sluggish suspension.

{¶ 36} Appellants attempt to refute this conclusion by challenging specific details of Mazur's testimony.[3] For example, as to Gillen, appellants correctly note that Mazur could not identify which specific tires were bulging. Mazur made similar comments as to each vehicle regarding his inability to recall which specific tires were bulging. Appellants also note that Mazur did not know whether each vehicle was equipped with an air or spring suspension. Appellants argue that "[w]without specific evidence as to appellants' vehicles and the performance of appellants' vehicle suspensions" that the trial

---

[3] Appellants' also make a lengthy argument that Mazur's use of "almost the exact same substantive language" in all five of the reports was "clearly drafted in an attempt to meet the minimum requirements of a constitutional traffic stop[.]" Appellants cite no authority, and this court could not identify any authority, requiring variation of the language an officer uses in his reports to describe similar observations. Further, as described herein, any concerns with Mazur's use of the same language in his reports goes to his credibility, an issue that was before the trial court when it found Mazur's testimony credible. Because appellants' argument on this issue lacks any legal support and is otherwise subsumed within the broader challenge to Mazur's credibility, we do not address this argument separately.

17.

court's finding regarding Mazur's observations were unfounded and did not constitute competent, credible evidence supporting its findings of fact.

{¶ 37} Appellants' argument, however, is misplaced as the testimony they point to challenges Mazur's credibility simply because he did not provide the type of evidence appellants believe was necessary to render the traffic stops valid. The testimony appellants identify to show that Mazur was not credible is limited to whether Mazur recalled the details of each individual stop with more specificity than his reports indicated. It is not inconsistent or otherwise contrary to Mazur's testimony that he observed bulging tires and slow, sluggish suspension on appellants' vehicles. Therefore, appellants' argument does not address whether the evidence that Mazur did provide was competent and credible, it only suggests that additional evidence was needed for the state to meet its burden. Thus, appellants' argument addresses the quantity of evidence, not the quality of evidence introduced.

{¶ 38} Appellants acknowledge that Mazur's credibility, generally, is the crux of their argument regarding the trial court's conclusions of fact, stating "[i]n essence, Deputy Mazur's reports and testimony are not credible, and this Court, in making its own findings of fact, cannot conclude that Deputy Mazur observed bulging tires and slow, sluggish suspension of appellant's vehicles." Appellants' challenge to Mazur's credibility to show that the trial court erred in denying their motion to suppress ignores the standard under which we review that denial. The trial court is "in the best position to resolve factual questions and evaluate the credibility of witnesses." *Burnside,* 2003-Ohio-5372, at ¶ 8. For this reason, we "must accept the trial court's findings of fact if

18.

they are supported by competent credible evidence". *Id.* at ¶ 8. We do not, as appellants suggest, make our own findings of fact. Therefore, having already determined that the trial court's findings of fact were supported by competent credible evidence, appellants' challenge to Mazur's credibility is not at issue in this appeal and their challenges to his credibility on appeal do not show that the trial court erred in denying appellants' motion.

{¶ 39} For these reasons, we accept the trial court's findings of fact as they are supported by competent, credible evidence.

> ii. *Mazur had reasonable, articulable suspicion to initiate a traffic stop of each appellant's vehicle.*

{¶ 40} Having accepted the trial court's findings of fact, we must now, without deference to the conclusion of the trial court, determine whether those facts satisfy the applicable legal standard—that is, whether Mazur had reasonable, articulable suspicion that appellants' vehicles were overweight. *Burnside* at ¶ 8. In each case, Mazur identified "tire bulge" as part of the basis on which he initiated appellants' traffic stops. It is well-established that an officer's observation of tire bulge alone is insufficient to show that an officer had reasonable, articulable suspicion that a violation occurred. *Maumee v. Kelley,* 1993 WL 313596 (6th Dist. Aug. 20, 1993); *Toledo v. Harris,* 99 Ohio App.3d 469 (6th Dist. 1995); *State v. Murphy,* 1997 WL 115411 (6th Dist. Mar. 14, 1997). However, bulging tires coupled with other indicia that a vehicle is overweight have consistently been held to support an officer's reasonable, articulable suspicion that a vehicle is overweight. *See Harris* at 470 (holding that bulging tires and straining engines when moving from a stopped position provided articulable, reasonable suspicion that

19.

vehicle was overweight); *State v. Gardner,* 1998 WL 80474 (6th Dist. Feb. 20, 1998) (holding that observations of the load being carried and "excessively" bulging tires provided articulable, reasonable suspicion that a vehicle is overweight); *State v. Doane,* 2003-Ohio-4862 (12th Dist.) (holding that bulging tires and "slow responding suspension" provided articulable, reasonable suspicion that a vehicle is overweight); *State v. Swain,* 2006-Ohio-2727 (5th Dist.) (holding that bulging tires, vehicle having difficulty making turns, and vehicle emitting black exhaust provided articulable, reasonable suspicion that a vehicle is overweight).

{¶ 41} Mazur plainly identified each appellant's vehicle as exhibiting slow, sluggish suspension in addition to the tire bulge. Mazur also testified regarding his training and experience in identifying factors, such as tire bulge and sluggish suspension, that suggested a vehicle was overweight. Under the totality of the circumstances, we find that these facts gave Mazur reason to believe that appellants' vehicles were overweight. As a result, Mazur identified a reasonable, articulable suspicion that each appellants' vehicle was overweight and the respective traffic stops did not violate the appellants' 4th Amendment rights.

{¶ 42} In challenging this result, appellants argue that the trial court relied on inapplicable case authority to deny their motion to suppress. Specifically, appellants argue that the cases on which the trial court relied to find that Mazur had reasonable, articulable suspicion to initiate the traffic stops involved either (1) a vehicle determined to be overweight following a legal safety inspection or (2) a vehicle determined to be overweight after a stop initiated as the result of a moving violation, or (3) included officer

20.

observations other than a slow or sluggish suspension. Essentially, appellants argue that since the present cases do not have the exact same factors present as those relied on by the trial court, that the trial court erred in denying their motions to suppress. We disagree.

{¶ 43} First, because we review whether the facts support the applicable legal standard on which the trial court based its denial of appellants' motion to suppress de novo, we do not offer any deference to the trial court's decision. *Burnside* at ¶ 8. Therefore, even if the trial court had based its decision on inapplicable or distinguishable case authority, that reliance is immaterial to our de novo review here.

{¶ 44} Second, the cases relied on by the trial court are, in fact, applicable to the present case as they provide the same legal standard on which we base our review—that is, whether the officer had articulable, reasonable suspicion that the vehicles were overweight. *See Maumee v. Kelley,* 1993 WL 313596 (6th Dist., Aug. 20, 1993) (determining whether bulging tires alone provided the officer reason to believe the vehicle was overweight); *State v. Murphy,* 2005-Ohio-135 (6th Dist.) (determining whether defendant averting their eyes while searching for paperwork provided the officer reason to believe that the vehicle was overweight); *State v. Swain,* 2006-Ohio-2727 (5th Dist.) (determining whether the vehicle's load and its "pulling real hard" provided the officer reason to believe the vehicle was overweight). As these cases, relied on by the trial court, identify the correct legal standard for determining appellants' motion, these are the same cases that we now rely on to establish the applicable legal standard. The minor factual distinction between those cases and appellants' cases here does not change

21.

that analysis. As a result, we disregard appellants' argument that the trial court's reliance on purportedly inapplicable case authority is either subject to our de novo review or that those cases are inapplicable to our review.

{¶ 45} Further, appellants' attempt to distinguish those cases because the facts are not identical to their cases, as support that the facts here do not meet the legal standard necessary to deny their motion to suppress, ignores that we review the totality of the circumstances surrounding the stop. Requiring this court, or any court, to only rule on a motion when it can find prior authority with the *exact same* facts would negate the applicable standard. Perhaps unsurprisingly, appellants do not cite any authority supporting this proposition.

{¶ 46} In sum, Mazur's testimony that he observed each appellant's vehicle with bulging tires and a slow, sluggish suspension, coupled with his training and experience, provided him with reason to believe appellants' vehicles were overweight. As a result, Mazur's initiation of a traffic stop did not run afoul of appellants' 4th Amendment rights and the trial court did not err in denying their motions to suppress. Accordingly, we find appellant's first assignment of error not well-taken.

*b. Appellants' convictions were supported by sufficient evidence.*

{¶ 47} In their second assignment of error, appellants argue that the state failed to introduce sufficient evidence to support their conviction. Specifically, appellants argue that because the state failed to provide testimony from Ken Johnson, the individual that performed the certification of the scales used in weighing their vehicles, that the state

22.

failed to introduce sufficient evidence to show that the scales were accurate. We disagree.

{¶ 48} In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Smith*, 80 Ohio St.3d 89, 113 (1997). In making that determination, we do not weigh the evidence or assess the credibility of the witnesses. *State v. Were*, 2008-Ohio-2762, ¶ 132. Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

{¶ 49} In order to obtain a conviction for a violation of R.C. 5577.04(E), the state must show that the vehicle was weighed by sealed scales. *State v. Gribble,* 24 Ohio St. 2d 85, 88 (1970). In order for scales to be sealed, they "shall be annually compared by a municipal, county, or state sealer with the state standards or standards approved by the state and such scales shall not be sealed if they do not conform to the state standards or standards approved by the state." R.C. 4513.33. To support this element, the state must show:

> that the seal affixed to the scale is official and is of the type enumerated in R.C. 4513.33. If the seal is as thus described, the law rebuttably presumes that the sealer performed his statutory duties in accordance with the requirements of that section. Evidence contrary to that presumption is a matter of defense.

*Gribble* at 89.

{¶ 50} At trial, Mazur testified that the appropriate seal was affixed to each of the scales used to weigh appellants' vehicles. Importantly, appellants do not challenge this

testimony. Instead, appellants argue that the state was obligated to elicit the testimony of Ken Johnson, the individual that calibrated and sealed the scales, in order to introduce sufficient evidence that the seals were valid. *Gribble* plainly shows that Mazur's testimony was sufficient to show that the scales were sealed in accordance with R.C. 4513.33. *Id.* Thus, the state was not obligated to introduce Mr. Johnson's testimony in order to show that the scales were sealed in accordance with R.C. 4513.33. Mr. Johnson's testimony was only necessary to challenge the calibration of the scales to undermine the state's evidence. The burden to elicit Mr. Johnson's testimony in that capacity rested with appellants, not the state. *Id.*

{¶ 51} For these reasons, we find that the state introduced sufficient evidence to show that the scales were certified in accordance with R.C. 4513.33. Further, it is undisputed that each of appellants vehicles weighed in excess of the gross vehicle weight limit of 80,000 pounds established in R.C. 5577.04(E), and that none of the appellants had a valid permit to travel in excess of that weight limit. Weighing this undisputed evidence in a light most favorable to the state, we find that the state introduced sufficient evidence to support appellants' convictions. Therefore, appellants' second assignment of error is found not well-taken.

24.

### III. Conclusion

**{¶ 52}** We find each appellants' first and second assignments of error in this consolidated appeal not well-taken and we affirm the trial court's October 6, 2023 denial of their motions to suppress and their December 5, 2023 convictions.

**{¶ 53}** Appellants are ordered to pay the costs of this consolidated appeal pursuant to App.R.24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.

_____
JUDGE

Gene A. Zmuda, J.

Charles E. Sulek, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.